NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0715n.06
Filed: October 3, 2007

No. 06-6183

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ELRICO MAXON,

    Defendant-Appellant.

                       /

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TENNESSEE

BEFORE:    MARTIN, GUY and CLAY, Circuit Judges.

    **CLAY, Circuit Judge.** Defendant, Elrico Maxon, appeals from the judgment entered by the district court sentencing him to 48 months imprisonment to be followed by 3 years of supervised release for his conviction on one count of being a felon in possession of a firearm. Specifically, Defendant challenges the district court's application of a four-level enhancement pursuant to § 2K2.1(b)(5) of the United States Sentencing Guidelines. For the reasons that follow, we **AFFIRM** the judgment of the district court.

**BACKGROUND**

On November 22, 2005, a federal grand jury indicted Defendant on one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). The conduct underlying the indictment occurred on March 6, 2005. Defendant had recently acquired a new rifle and apparently decided to test fire the weapon from the patio of his apartment. Officers on foot patrol in the apartment complex heard the gunfire and observed muzzle flashes,[1] responded to the point of origin, and found Defendant there. Defendant admitted ownership of the weapon and confessed that he had fired it. Defendant had a previous felony conviction and, accordingly, the officers arrested him for possession of a firearm. Defendant pled guilty on June 9, 2006.

In anticipation of sentencing, the U.S. Probation Officer compiled a Pre-Sentence Investigation Report (hereinafter "PSR"). Defendant's PSR provided for a base offense level of 20 under the United States Sentencing Guidelines (hereinafter "the Guidelines"). The PSR applied a four-level enhancement under § 2K2.1(b)(5) of the Guidelines for use of a firearm in connection with another felony offense, thus yielding a total offense level of 24. An additional two-level enhancement for obstruction of justice pursuant to § 3C1.1 increased Defendant's offense level to 26. Defendant fell into Criminal History Category III and, accordingly, the PSR set forth an advisory Guidelines range of 78 to 97 months.

On September 7, 2006, the district court conducted Defendant's sentencing hearing and heard testimony from government witnesses. The district judge rejected the two-level enhancement for obstruction of justice under § 3C1.1, finding it unwarranted in this case. Additionally, he credited

---

[1] A "muzzle flash" is a "flash of light caused by the reaction between oxygen and the burning gases which escape form the barrel of a gun behind the bullet upon firing." Oxford English Dictionary (2003).

Defendant with a three-level reduction for acceptance of responsibility. However, over Defendant's objections, the district judge did apply the four-level enhancement under § 2K2.1(b)(5). Thus, the district judge calculated a total offense level of 21 which, when taken with a Criminal History Category III, yielded an advisory Guidelines range of 46 to 57 months.

The district court expressly acknowledged the advisory nature of the Guidelines and, subsequently, invited counsel to discuss the relevant § 3553(a) factors. The government stressed the seriousness of Defendant's conduct and his criminal history, which included convictions for attempted second degree murder and aggravated assault. The government further argued that the need to deter similar conduct and to protect the community rendered a sentence within the Guidelines range appropriate. Defendant sought a downward departure on the basis of the "unusual" circumstances supporting the § 2K2.1(b)(5) enhancement – specifically, that Defendant did not fire the gun with bad intent but merely did "a real stupid thing." (J.A. at 44-45.) Ultimately, the district court sentenced Defendant to 48 months imprisonment and three years of supervised release. Defendant timely appealed.

## DISCUSSION

### A. Standard of Review

Whether the district court properly concluded that Defendant used or possessed a firearm in connection with another felony offense under § 2K2.1(b)(5) of the Guidelines constitutes a mixed question of law and fact that this Court reviews *de novo*. *United States v. Layne*, 324 F.3d 464, 468 (6th Cir. 2003). This Court reviews the district court's underlying factual findings for clear error. *Id.*

**B.      Guidelines Enhancement Pursuant to § 2K2.1(b)(5)**

Defendant challenges the district court's application of a four-level sentencing enhancement pursuant to § 2K2.1(b)(5) of the Guidelines.  Before the district court below, Defendant filed a position paper in response to the PSR, raising an objection to the four-level enhancement pursuant to § 2K2.1(b)(5).  Defendant admitted to discharging the weapon, but claimed that he "was careful to aim it in the sky, not in the direction of any buildings, and certainly not in the direction of any person."  (J.A. at 12.)  Defendant further noted that the Tennessee state court charged him with misdemeanor reckless endangerment.  At Defendant's sentencing hearing, he again objected to the § 2K2.1(b)(5) enhancement, asserting many of the arguments articulated in his position paper.

At the sentencing hearing, the prosecution called Officer Billy Gray, the arresting officer at the scene.  Officer Gray testified that he and two other officers were patrolling the Pepper Tree Apartments on March 6, 2005 around 9:00 p.m.  Gray recalled that, aside from the officers, others were present outside the apartment complex that night "walking to and from." (J.A. at 38.)  While on patrol, the officers heard several gunshots, and through the darkness outside, they observed muzzle flashes coming from a unit approximately 30 feet away.  Officer Gray indicated that they were "all under the impression that the gun was shot in [their] direction" and that they heard the bullets go over their heads before hitting a wall.  *(Id.* at 31-32.)  He surmised that the gun was pointed at an angle when fired and not straight up in the air.  The officers identified a bottom-floor apartment as the origin of the shots, and they approached to investigate.  Gray stated that they found three or four men standing on the porch when they arrived and identified a .22-caliber rifle against

4

the porch wall. When asked by the officers, Defendant admitted ownership of the rifle and that he had fired it. The officers subsequently arrested Defendant for possession of the firearm.

Following Officer Gray's testimony, the district court framed the issue as follows:

The question is, is it the type of reckless conduct that can result in injury and reckless endangerment. Nobody is saying that defendant – and the officer is not saying that the defendant was trying to shoot them or trying to shoot anybody. If he was trying to shoot somebody and there had been somebody fleeing, he was in some type of confrontation, the charge wouldn't have been reckless endangerment.

. . . The problem is that people get hurt from this type of activity. It is extremely thoughtless. It is dangerous just in and of itself, and that's the problem. . . .

(J.A. at 37-39.) At the close of the hearing, just before imposing a sentence, the district judge again referenced the enhancement:

[Defense counsel has] convinced me that there was no malintent in firing the weapon, but he has also convinced me that it was a really bad idea, which it was, and I am convinced that someone could have been hurt, and that is reckless endangerment.

(Id. at 47.) Thus, the court concluded that the four-level enhancement applied in Defendant's case.

Section 2K2.1(b)(5) of the Guidelines provides for a four-level increase to a defendant's base offense level "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense." U.S. Sentencing Guidelines Manual § 2K2.1(b)(5) (2005). "Felony offense" is defined as "any offense (federal, state, or local) punishable by imprisonment for a term exceeding one year, whether or not a criminal charge was brought, or a conviction obtained." *Id.* cmt. n.4. Moreover, "[t]he burden is on the government to prove, by a preponderance of the evidence, that a particular sentencing enhancement applies." *United States v. Dupree*, 323 F.3d 480, 491 (6th Cir. 2003).

5

In Tennessee, reckless endangerment with a deadly weapon constitutes a Class E felony punishable for a term of imprisonment exceeding one year. TENN. CODE ANN. § 39-13-103; *id.* at § 40-35-111(b)(5). A defendant commits reckless endangerment with a deadly weapon if he "recklessly engages in conduct that places or may place another person in imminent danger of death or serious bodily injury." TENN. CODE ANN. § 39-13-103. Under the Tennessee code,

> "Reckless" refers to a person who acts recklessly with respect to circumstances surrounding the conduct or the result of the conduct when the person is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur.

*Id.* at § 39-11-302(c). "Imminent danger" occurs when a person is "placed in a reasonable probability of danger as opposed to a mere possibility of danger." *State v. Payne*, 7 S.W.3d 25, 28 (Tenn. 1999) (citing *State v. Fox*, 947 S.W.2d 865, 866 (Tenn. Ct. App. 1996)). Where the victim is the "public at large," as permitted under Tennessee law, the government must show that at least one person was present within the "zone of danger." *Id.* The "zone of danger" consists of "that area in which a reasonable probability exists that the defendant's conduct would place others in imminent danger of death or serious bodily injury if others were present in that zone or area." *Id.*

On appeal, Defendant argues that there was insufficient evidence to support a finding that his conduct placed others in imminent danger. Defendant's argument seems to hinge on the fact that Defendant fired the gun into the air, not in the direction of anyone in the surrounding area. Here, Defendant relies on *State v. Baldwin*, No. 01C01-9612-CR-00530, 1998 WL 426199 (Tenn. Ct. App. July 29, 1998) (unpublished). In *Baldwin*, the defendant shot a bartender in a small and narrow restaurant. *Id.* at *1, 4. On the theory that "the bullet could have ricocheted off one of the metal appliances" to strike a customer seated directly behind the defendant, the trial court convicted the

defendant of felony reckless endangerment of the customer. *Id*. at *4. The appeals court observed that "discharging a weapon under circumstances 'where a stray bullet might possibly strike another person' is insufficient to support a conviction for reckless endangerment." *Id*. There, the conviction was based on "mere speculation" that the customer could have been hit, and the evidence was therefore insufficient to prove the elements beyond a reasonable doubt. *Id.*

In our view, *Baldwin* does not control the instant case. First, as this Court previously observed in a factually similar case, "the applicable burden of proof in a criminal prosecution (beyond a reasonable doubt) is . . . different from the standard of proof required for the application of a sentencing enhancement under the Guidelines (preponderance of the evidence – so long as the sentence does not exceed the statutory maximum)." *United States v. Lester*, No. 06-5043, 2007 WL 1804350, at *5 (6th Cir. June 25, 2007) (unpublished). Second, it is factually inapposite. The defendant in *Baldwin* could only strike one person behind the bar, and endangerment of others necessarily would require the bullet to ricochet and continue on with enough force to cause harm. In the instant case, Defendant shot his rifle in the dark of night from his patio in a residential apartment complex in the general direction of another part of the complex. Additionally, Officer Gray testified that he heard bullets over his head and that besides the officers, other individuals were present outside the complex. The instant record supports more than "mere speculation" that the bullet could strike another person. Indeed, the officers and others were "subjected to a much greater risk of harm than the customer in *Baldwin*." *Lester*, 2007 WL 1804350, at *5.

Another Tennessee case, *State v. Fox*, 947 S.W.2d 865 (Tenn. 1996), is factually closer to the case at bar. In *Fox*, the defendant fired a pistol into the air or into a tree. *Id*. at 865. However,

the Tennessee appeals court found insufficient evidence to sustain his conviction for reckless endangerment because there "was no testimony that anyone was either in the tree being fired upon or outside the apartment building in the immediate vicinity of the [defendant]." *Id.* Yet, the instant case is readily distinguishable. Again, Defendant fired the gun into the air, or on a diagonal trajectory, in the general direction of the officers. The officers were standing outside on the patio of another unit approximately 30 feet away, and Officer Gray heard a bullet fly over the officers' heads. Even if Defendant fired the bullet into the air, basic principles of gravity dictate that what comes up generally must come down. By shooting the gun into the air while others stood in the "immediate vicinity," Defendant placed those individuals in a "reasonable probability of danger." *See Payne*, 7 S.W.3d at 28.

In the instant case, we find that the government met its burden, and accordingly, that the district court did not err in applying the enhancement under § 2K2.1(b)(5) of the Guidelines. The record indicates that Defendant fired a gun into the air, or in a diagonal trajectory, in a residential apartment complex in the dark. The record further indicates that the officers heard bullets go over their heads before hitting a wall. Not only were the officers outside the complex, but other people were outside as well, "walking to and from." (J.A. at 28.) Defendant's conduct placed the officers and others outside "in a reasonable probability of danger" when he fired the rifle into the air in an area where others, including the arresting officer, were present. *See Payne*, 7 S.W.3d at 28. As the district judge observed, a .22-caliber bullet that strikes a person at a range of 30 feet "could do some damage." (J.A. at 39.) Obviously, serious bodily injury, if not death, could follow.

Consequently, the district court did not err in applying § 2K2.1(b)(5) of the Guidelines to enhance Defendant's sentence by four levels.

**CONCLUSION**

For the reasons set forth above, this Court **AFFIRMS** the district court judgment.