RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0360p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

RICHARD MUKES,

*Defendant-Appellant*.

No. 20-5134

───────────────

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:19-cr-20095—Mark S. Norris, Sr., District Judge.

Argued: October 20, 2020

Decided and Filed:November 17, 2020

Before: MERRITT, MOORE, and GIBBONS, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ARGUED:** Robert L. Thomas, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. Raney Irwin, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee. **ON BRIEF:** Robert L. Thomas, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Memphis, Tennessee, for Appellant. Raney Irwin, UNITED STATES ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellee.

───────────────

## OPINION

───────────────

JULIA SMITH GIBBONS, Circuit Judge. The district court sentenced Richard Mukes to a term of 120 months' imprisonment after he pled guilty to possessing a firearm as a convicted

felon.  *See* 18 U.S.C. § 922(g)(1).  Mukes appeals his sentence because he believes that the district court improperly calculated his sentencing guidelines range.  Specifically, he argues that the district court erred in applying a four-point enhancement for using or possessing a firearm in connection with another felony offense, U.S.S.G. § 2K2.1(b)(6)(B), and in applying a two-point enhancement for reckless endangerment during flight, § 3C1.2.  Mukes further contends that the district court erred in denying him a two-point reduction for acceptance of responsibility, § 3E1.1.  Because the government failed to demonstrate that either enhancement was applicable on this record, the district court erred in applying them.  We therefore vacate Mukes's sentence and remand the case to the district court for resentencing on the existing record with instructions not to apply either enhancement.  In light of our decision on the enhancements, the district court should consider whether Mukes may receive the two-point reduction for acceptance of responsibility.

I.

Mukes was arrested after a dispute with his girlfriend, Victoria Davis.  He was charged in a one-count indictment with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), to which he pled guilty.  While Mukes does not dispute that he unlawfully possessed a firearm, he does dispute the facts surrounding the charge, which are relevant for the sentencing enhancements at issue in this appeal.

At the time of the incident, Mukes was living with Davis in a home owned by Davis's mother.  In the early morning hours of October 5, 2018, Davis and Mukes had an argument.  There are two accounts of what happened next.  Davis told police that around 2:20 a.m. Mukes retrieved a firearm that he kept in the shared residence, exited the home, and that Davis locked the door behind him.  Davis said that Mukes subsequently fired the gun into the air.  Davis telephoned the police and Mukes left the scene.  According to Davis, Mukes returned a half hour later and attempted to enter the home.  Davis said that when she refused to let Mukes inside, he again fired the gun into the air, firing a total of four shots that night.  Davis telephoned the police a second time.  The record of arrest stated that Davis remained inside her home for the duration of the altercation.  Davis said that her mother, brother, and two nephews were also in the home when this incident occurred.

Mukes disputed Davis's version of events. He denied ever firing the weapon or threatening Davis. According to Mukes, he and Davis had argued about their relationship earlier that night and Davis told him to come retrieve his clothing. Mukes said that his cousin drove him to Davis's home. Mukes denied entering the home, stating that Davis would not let him in. He claimed that he already had the firearm in his possession, maintaining that Davis knew that he always carried it on his person, but denied brandishing or firing it. Mukes said that Davis came outside and they argued briefly. According to Mukes, Davis said that she was not "going to stand out here and talk to [him]" and went inside to call the police because she knew he had a gun on his person. DE 48, Sent. Tr., Page ID 143. By this point, Mukes said that his cousin had left with the car, so he walked away from the house. Mukes agreed that he returned a short while later, in a second attempt to retrieve his clothing. He denied firing the gun at any point that night.

The events surrounding Mukes's arrest are also disputed, and the government has not provided a consistent narrative. The government and Mukes agree that when police responded to Davis's second call, officers observed Mukes walking away from the residence while holding a black handgun. They also agree that officers told Mukes to drop the gun. And they agree that Mukes fled from the officers before being caught shortly thereafter. Officers recovered the handgun, which was loaded. But the parties disagree about when precisely Mukes dropped the gun. The record of arrest stated that Mukes threw the weapon while fleeing from the police. The affidavit of complaint stated that Mukes dropped the firearm before he began to flee. The government provided no witness testimony clarifying this discrepancy. Mukes's testimony supported the version of events described in the affidavit of complaint: he repeatedly insisted that he dropped the gun in response to police commands before turning to flee the scene.

At the plea hearing, Mukes admitted that he possessed the firearm but disputed the government's recitation of the facts regarding his alleged discharge of the gun and subsequent flight. His counsel noted that these contested facts would implicate "sentencing issues that may result in enhancements." DE 49, Change Plea Hr'g, Page ID 233. The government accepted Mukes's stipulation that he knowingly possessed the firearm as sufficient for purposes of the guilty plea.

The presentence report adopted the version of events in the record of arrest—that Mukes had dropped the firearm after he had already begun to flee—without mentioning the conflicting affidavit. The presentence report calculated Mukes's base offense level at 24, due to his prior felony convictions, and recommended two enhancements. The first was a four-point enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for using a firearm in connection with another felony offense. The stated basis for this enhancement was discharging the firearm and pending charges for "Reckless Endangerment-Deadly Weapon" in state court. The presentence report also recommended a two-point enhancement under U.S.S.G. § 3C1.2 for recklessly creating a substantial risk of death or serious bodily injury to another person while fleeing from a law enforcement officer. The stated basis for this enhancement was that Mukes threw the firearm while fleeing. With a total offense level of 30 and a criminal history category of III, the recommended sentencing guidelines range was 121 to 151 months imprisonment. Since the statutory maximum for violations of 18 U.S.C. § 922(g)(1) is 10 years, the guideline term of imprisonment was 120 months. *See* § 924(a)(2); U.S.S.G. § 5G1.1(a). Mukes subsequently objected to the presentence report, raising the same disputed facts.[1]

Mukes and the government requested an evidentiary hearing because they were unable to resolve the disputed facts regarding the discharge of the firearm and Mukes's flight.[2] The government introduced Davis's statement to police on the night of the arrest, the arrest record, the affidavit of complaint, the Shelby County sheriff's office gang log, and several recordings of jailhouse telephone calls between Mukes and Davis. On the telephone calls, Davis can be heard yelling at Mukes that he had threatened her and her family, hit her in the face, put a gun to a

---

[1]Mukes also disputed the presentence report's conclusion that he was a member of a gang, apparently to avoid placement in prison around the gang members. Much of the government's focus during the sentencing hearing involved whether Mukes was an active gang member, which the government admitted did not affect the calculation of the sentencing guidelines.

[2]Before either side had presented evidence at the evidentiary hearing, the district court stated that it was "inclined to agree" with the government's version of events, but that it would "try to keep an open mind here as [it] entertain[ed] the proof." DE 48, Sent. Tr., Page ID 133. As we have "repeatedly noted, 'great care must be taken by a judge to always be calmly judicial, dispassionate and impartial.'" *Anderson v. Sheppard*, 856 F.2d 741, 745 (6th Cir. 1988) (quoting *United States v. Hickman*, 592 F.2d 931, 933 (6th Cir. 1979)). "We require not only an absence of actual bias, but an absence of even the appearance of judicial bias." *Id*. at 746. Although the district court made no further comments indicating an absence of impartiality during the hearing, its remarks at the outset are a troubling departure from the appearance of impartiality that judges must maintain at all times.

person's head, and had fired the gun multiple times that night. Mukes cried on the calls but did not explicitly deny Davis's allegations, although he denied them at the hearing. Mukes testified at the hearing, relaying his account of the night's events as detailed above.

The government argued that the four-point enhancement for using a firearm in connection with another felony offense was justified because Mukes had discharged the firearm into the air four times, which constituted felony reckless endangerment under Tennessee law. The government pointed to Davis's statement and Mukes's silence on the calls as evidence sufficient to support the enhancement. Mukes argued that the government had not met its burden to show that the enhancement applied based on that evidence alone.

The government also argued that the two-point enhancement for reckless endangerment during flight was appropriate because Mukes had thrown down the firearm while being pursued by police. The government argued that either Mukes's flight with the firearm or his dropping of it would each independently provide the factual basis for the enhancement. While the government acknowledged that Mukes stated that he dropped the weapon upon command before fleeing, the government argued that the "more detailed" record of arrest "clearly shows that [Mukes] was ordered to throw the weapon down and did not," and instead "threw" the weapon as he was being chased. DE 48, Sent. Tr., Page ID 172. The government did not mention the conflicting affidavit of complaint, which was signed by the same officer who wrote the unsworn record of arrest. Mukes argued that the government failed to meet its burden to support the enhancement, noting that the only sworn document in the record—the affidavit of complaint— supported his account that he dropped the firearm when ordered, before fleeing. Mukes also argued that the government failed to show that there was a substantial threat because the government put on no evidence about the presence of bystanders in the vicinity or any danger to the officers.

Finally, the government opposed granting Mukes any reduction for acceptance of responsibility because Mukes "frivolously contested" firing the gun, threatening Davis, and throwing the gun on the ground while fleeing police. Mukes argued that he should receive the reduction based on his previously filed statement accepting responsibility for the offense charged in the indictment. Since the evidence of whether he had discharged the firearm was his word

against Davis's unsworn recording and police statement, Mukes argued that he should not be penalized for contesting those facts when he accepted responsibility for the crime with which he was charged.

The district court concluded that the four-point enhancement for using or possessing a firearm in connection with another felony was appropriate, although it is not clear on what grounds. It stated that Mukes's indictment in state court was "sufficient in and of itself" to justify the enhancement, but, even if insufficient, that the government established the necessary proof that Mukes had discharged the gun. DE 48, Sent. Tr., Page ID 186.

The district court also concluded that the two-point enhancement for reckless endangerment during flight was appropriate, regardless of "whether the gun was dropped upon the police officer's command or simply dropped or thrown by [Mukes] independently." *Id.* at 187. "[I]n any event," the court concluded, the government "had established by a preponderance of the evidence . . . that [Mukes] recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from law enforcement." *Id.* The court did not identify any person whom Mukes had placed at substantial risk of death or injury.

Finally, the district court declined to grant Mukes a two-point reduction for acceptance of responsibility. Since the court concluded that the government had established its version of the facts by a preponderance of the evidence, the court thought that a reduction for acceptance of responsibility was inappropriate.

After considering the 18 U.S.C. § 3553 factors, the court sentenced Mukes to the statutory maximum of 120 months imprisonment. Mukes appealed.

## II.

Mukes raises three issues on appeal. First, he argues that the district court erred in applying the U.S.S.G. § 2K2.1(b)(6)(B) enhancement for using or possessing a firearm in connection with another felony because the government did not meet its burden to show that Mukes committed "another felony offense." Second, Mukes argues that the district court erred in applying the § 3C1.2 enhancement for reckless endangerment during flight because the

government did not establish that Mukes dropped or threw a weapon while fleeing from police. Third, Mukes argues that the district court erred in denying him the two-point reduction for acceptance of responsibility under § 3E1.1 when he had accepted responsibility for the charged offense but challenged the facts surrounding the two sentencing enhancements. Because we agree that the district court erred in applying the two sentencing enhancements, we vacate Mukes's sentence and remand the case to the district court for resentencing on the existing record. On remand, the district court is not to apply the § 2K2.1(b)(6)(B) enhancement because Mukes's alleged conduct does not amount to a felony under Tennessee law. The district court also may not apply the § 3C1.2 enhancement because the government failed to meet its burden of proof, and we see no reason to allow the government an additional opportunity to make its case. In light of our decision on the two enhancements, the district court should consider whether Mukes may receive the two-point reduction for acceptance of responsibility, § 3E1.1.

## A.

First, Mukes argues that the district court erred in applying the four-point enhancement for using or possessing a firearm in connection with another felony offense. We agree. Because there was no evidence in the record that Mukes had committed "another felony offense," it was error for the district court to apply this sentencing enhancement.

The enhancement under U.S.S.G. § 2K2.1(b)(6)(B) increases the defendant's offense level by four "[i]f the defendant . . . used or possessed any firearm or ammunition in connection with another felony offense." For this enhancement to apply, the firearm must have "facilitated, or had the potential of facilitating, another felony offense." § 2K2.1 cmt. n.14(A). "Another felony offense" is any "federal, state, or local offense" that is "punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." *Id*. cmt. n.14(C). The burden of proof for this enhancement falls on the government. *United States v. Goodman*, 519 F.3d 310, 321 (6th Cir. 2008). We review the district court's legal interpretation of the sentencing guidelines de novo and its factual findings under the clearly erroneous standard. *United States v. Byrd*, 689 F.3d 636, 639 (6th Cir. 2012). We give "'due deference' to the district court's determination that the firearm was used or possessed 'in connection with' the other felony, thus warranting the application of the . . . enhancement."

*United States v. Seymour*, 739 F.3d 923, 929 (6th Cir. 2014) (alteration in original) (quoting *United States v. Taylor*, 648 F.3d 417, 432 (6th Cir. 2011)).

The purported "other felony" Mukes committed was the Tennessee felony offense of reckless endangerment with a firearm, because he "fired the pistol." CA6 R. 23, Appellee Br., at 14. Mukes had been charged in Shelby County, Tennessee with a Class E felony for "Reckless Endangerment- Deadly Weapon," in violation of Tenn. Code Ann. § 39-13-103. *Tennessee v. Mukes*, C1904576, Shelby County Criminal Justice System Portal (indicted May 10, 2019). That charge was later dismissed by entry of an order of nolle prosequi. *Id*. (disposed of Oct. 7, 2020). The government has repeatedly and consistently stated that Mukes committed this state felony when he fired four shots into the air and that this state charge served as the predicate felony to justify the enhancement. The district court agreed to apply the enhancement, finding that the Shelby County indictment was "sufficient in and of itself" to justify the enhancement, and, even if it was not sufficient, that the government established the necessary proof that Mukes had discharged the gun. DE 48, Sent. Tr., Page ID 186.

The district court's conclusion that the state court indictment was "sufficient in and of itself" was incorrect. A sentencing court may consider all relevant evidence, whether or not such evidence would be admissible at trial, as long as it has "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a). But an indictment, standing alone, cannot be used "as evidence that all conduct charged in the indictment occurred." *United States v. Crowell*, 997 F.2d 146, 149 (6th Cir. 1993). Instead, "due process requires . . . some evidentiary basis beyond mere allegation in an indictment." *United States v. Smith*, 887 F.2d 104, 108 (6th Cir. 1989) (emphasis omitted). Therefore, it was error for the district court to rely solely on the indictment in state court to establish that Mukes had used the firearm in the commission of "another felony."

In any event, the district court erred in applying this enhancement because Mukes did not violate Tenn. Code Ann. § 39-13-103. Tennessee law is clear: a defendant must do more than fire a gun into the air to be guilty of this felony. Because the record is devoid of evidence that anyone was in the vicinity when Mukes allegedly discharged the gun, he could not have violated § 39-13-103. Therefore, the enhancement under § 2K2.1(b)(6)(B) is inapplicable.

Under Tennessee law, a person commits reckless endangerment if he "recklessly engages in conduct that places or may place another person in imminent danger of death or serious bodily injury." Tenn. Code Ann. § 39-13-103(a). The offense is a felony when committed with a deadly weapon. *Id*. § 39-13-103(b)(2). "Imminent danger" occurs when a person is "placed in a reasonable probability of danger as opposed to a mere possibility of danger." *State v. Payne*, 7 S.W.3d 25, 28 (Tenn. 1999) (citing *State v. Fox*, 947 S.W.2d 865, 866 (Tenn. Crim. App. 1996)). Tennessee law requires that when the victim is the "public at large," the government must show that there was at least one person within the "zone of danger." *Id*. The "zone of danger" consists of "that area in which a reasonable probability exists that the defendant's conduct would place others in imminent danger of death or serious bodily injury if others were present in that zone or area." *Id*.

In *Fox*, the defendant had been convicted of reckless endangerment because he fired a pistol into the air or at a tree while standing outside an apartment building. 947 S.W.2d at 865. The Tennessee appeals court found insufficient evidence to sustain the conviction because there "was no testimony that anyone was either in the tree being fired upon or outside the apartment building in the immediate vicinity of the [defendant]." *Id*. Indeed, the court held that the "mere discharge of a weapon into the air . . . standing alone, is not sufficient to constitute commission of reckless endangerment." *Id*. at 866.

We considered this Tennessee statute as the basis for a § 2K2.1(b)(6)(B) enhancement in two similar cases. In both cases, the defendant was alleged to have fired a gun into the air. *See United States v. Maxon*, 250 F. App'x 129, 133 (6th Cir. 2007); *United States v. Lester*, 238 F. App'x 80, 85 (6th Cir. 2007). And in both cases, we determined that the enhancement was appropriate based on the Tennessee statute because the district court had found other people to be within the "zone of danger." *Maxon*, 250 F. App'x at 133–34 ("Defendant's conduct placed the officers and others outside 'in a reasonable probability of danger' when he fired the rifle into the air in an area where others, including the arresting officer, were present."); *Lester*, 238 F. App'x at 86 ("Based on the evidence of the children's close proximity to Lester when he fired the gun, we will defer to the district court's determination that the bystanders were in imminent danger of death or serious bodily injury."). Both *Maxon* and *Lester* held that *Fox* was "readily,"

*Maxon*, 250 F. App'x at 133, and "easily distinguishable" *Lester*, 238 F. App'x at 86, because officers, passersby, or children were in the vicinity when the defendants fired their weapons into the air.

This case is not distinguishable from *Fox*. It is *Fox*. There is no evidence in the record that anyone was in the vicinity when Mukes allegedly fired four shots into the air between two and three a.m. In the government's version of events, Davis remained inside the home. *See Fox*, 947 S.W.2d at 865 (noting that while there was an apartment building in the immediate vicinity, the defendant was not guilty under § 39-13-103 because no one was *outside* the building). And unlike in *Maxon*, there were no police officers on the scene at the time. Because the government did not present evidence that there was anybody within the "zone of danger" that faced a "reasonable probability" of "imminent danger of death,"[3] the district court's conclusion that Mukes violated the statute by firing the gun into the air was incorrect.[4] *See Payne*,

---

[3]At oral argument, we first raised the issue of this line of Tennessee cases with defense counsel, while advising the Assistant U.S. Attorney that we wanted her to have an opportunity think about them too. Oral Argument at 2:17–3:49. When we asked the AUSA about the cases during her argument, her response was that "under 14(A) of the application note, if the firearm had the *potential* to facilitate another felony offense, then it doesn't matter whether the criminal charge was brought or a conviction was obtained on that." *Id*. at 12:16–12:31. It is true that a defendant need not face charges or be convicted of the other felony offense for the enhancement to apply. *See* U.S.S.G. § 2K2.1 cmt. n.14(C). But the "felony must be specifically identifiable" and the government "must then demonstrate that the defendant used a firearm 'in connection with' that offense by showing that 'the weapon facilitated or potentially facilitated the felonious conduct or emboldened the defendant during the felonious conduct.'" *United States v. Bullock*, 526 F.3d 312, 317 (6th Cir. 2008) (quoting *United States v. Carter*, 355 F.3d 920, 925 (6th Cir. 2004)). As we pointed out to government counsel, that requires the existence of *an underlying felony offense*, as opposed to conduct that does not constitute a felony under state law. The mere potential of committing some unidentifiable future felony is insufficient to sustain the enhancement. Counsel's response to the question simply misstated the law.

[4]The district court may have also believed that the enhancement was warranted because Mukes violated Tenn. Code Ann. § 39-13-103 even without discharging the firearm. DE 48, Sent. Tr., PageID 186 (stating that "the discharge of the firearm in terms of application of 2K2.1(b)(6)(b) is immaterial"). But this conclusion would also constitute error. At sentencing, the government made references to telephone calls in which Davis said that Mukes had punched her and pointed a firearm at a person called "Man," although it is unclear when this may have occurred. Nothing in the record connects these incidents temporally or otherwise to the offense charged here. And the government did not rely on either of these incidents to satisfy the "other felony" requirement; the government relied instead on the allegation that Mukes *discharged* the firearm into the air. To the extent that the district court considered the bare allegations in the calls, they would not have supported the court's finding that Mukes violated Tenn. Code Ann. § 39–13–103. There is no evidence that Mukes punched Davis while using or possessing a firearm. *Cf. United States v. Suggs*, 423 F. App'x 501, 505 (6th Cir. 2011) (holding enhancement appropriate where the district court "found that defendant possessed a loaded firearm, cocked it, assaulted [a woman] while holding the firearm, and would have used it to hurt someone had it not been taken from him" which was "enough to establish a connection between the firearm and reckless endangerment, Tenn. Code Ann. § 39–13–103"). Likewise, pointing a firearm at "Man" on some unspecified occasion is, without more, unlikely to satisfy the requirements for reckless

7 S.W.3d at 28.  Since Mukes did not commit "another felony offense," the enhancement under § 2K2.1(b)(6)(B) is inapplicable.

B.

Mukes also argues that the district court erred in applying the two-point sentencing enhancement for reckless endangerment during flight.  We agree.  Since the facts available to the district court are inadequate to support a finding by the preponderance of the evidence that Mukes's conduct satisfied the requirements for the § 3C1.2 enhancement, we vacate his sentence and remand for resentencing without it.

The § 3C1.2 enhancement applies "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer."  The government must show that the defendant

> (1) recklessly, (2) created a substantial risk of death or serious bodily injury, (3) to another person, (4) in the course of fleeing from a law enforcement officer, (5) and that this conduct occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

*United States v. Dial*, 524 F.3d 783, 786–87 (6th Cir. 2008) (internal citations omitted).  Our case law requires the government to "link a specific aspect of the flight . . . with a specific risk." *United States v. Brooks*, 763 F. App'x 434, 441 (6th Cir. 2019).  And the "government ha[s] the burdens of production and persuasion" to prove facts that justify a sentencing enhancement. *Goodman*, 519 F.3d at 323 (quoting *United States v. Leonzo*, 50 F.3d 1086, 1088 (D.C. Cir. 1995)).  The government provided three theories to support the application of the enhancement in this case: (1) fleeing with a firearm created a substantial risk of harm, (2) the firearm could have discharged when Mukes dropped it, and (3) running after leaving a gun in a public place risked others recovering it.  The district court applied the enhancement without specifying which theory of reckless endangerment it credited.

---

endangerment under Tennessee law.  *See United States v. Clark*, 403 F. App'x 12, 15 (6th Cir. 2010) (expressing skepticism that merely "show[ing] up with a gun and cock[ing] it" would be sufficient to constitute reckless endangerment under Tennessee law).  *Cf. State v. Campbell*, No. W2005-01418-CCA-R3-CD, 2006 WL 3147050 (Tenn. Crim. App. Nov. 3, 2006) (upholding conviction under § 39–13–103 where defendant aimed gun and shot victim).

We have said that "significant deference to the district court is required" when considering the reckless endangerment enhancement because "[w]hile the question of what constitutes endangerment is a mixed question of law and fact, it is highly fact-based." *United States v. Hazelwood*, 398 F.3d 792, 796 (6th Cir. 2005). However, for the reasons discussed below, the government failed to demonstrate that the enhancement applied to Mukes, and the district court therefore erred by applying it.

1.

The government's first theory of reckless endangerment was that by fleeing with a firearm, Mukes created a dangerous situation because the officers could have fired shots in response to observing him fleeing with a weapon in hand. "Drawing a gun in front of officers," creating "a substantial risk that officers would open fire and perhaps injure other officers or bystanders," is a theory of reckless endangerment "supported by our caselaw." *Brooks*, 763 F. App'x at 440. Because officers cannot "know whether a firearm is loaded or unloaded, pulling out any firearm in view of police officers while in flight creates a risk that officers might fire their weapons." *Id.*

The district court was presented with three pieces of evidence regarding Mukes's flight from the officers. First, the government submitted the affidavit of complaint, which included the arresting officer's sworn statement that Mukes had dropped the firearm before fleeing. Next, the government introduced the unsworn record of arrest, which stated that Mukes ignored police commands to drop the firearm, turned to flee, and threw the firearm during his flight. Finally, Mukes testified at sentencing that he complied with the officer's commands and dropped the firearm before turning to flee the scene.

The district court did not resolve this factual dispute, stating that it was "not clear to the Court whether the gun was dropped upon the police officer's command or simply dropped or thrown by the Defendant independently." DE 48, Sent. Tr., Page ID 187. Yet the court still concluded that, either way, the enhancement was applicable. According to the version of events supported by the affidavit of complaint and Mukes's testimony, Mukes no longer had a weapon

when he fled from the officers.[5] But the theory that flight while brandishing a firearm created "a risk that officers could have reasonably opened fire," CA6 R 23, Appellee Br., at 23, depended on a factual finding that Mukes actually fled while holding a firearm.[6] By determining that it was "not clear" based on the government's evidence when Mukes dropped the firearm, the district court effectively decided that the government had not met its burden of proof on its first theory of reckless endangerment. It was therefore error to apply the enhancement on the government's first theory.

2.

The government's second theory at sentencing was that Mukes created a dangerous situation by dropping the gun because it "could have fired [on impact] and someone could have been hit." DE 48, Sent. Tr., Page ID 176. We have recognized this theory of reckless endangerment during flight under certain circumstances. In *United States v. Howard*, we said that the "risk created by throwing a cocked and loaded gun is obvious," because "when a person throws a loaded gun on the ground while running, the weapon [could] easily [be] discharged." 301 F. App'x 446, 448–49 (6th Cir. 2008) (alterations in original). However, we have declined to apply the enhancement on this basis where "there is no indication in the record that [the defendant's] firearm was actually cocked when he tossed it." *United States v. May*, 430 F. App'x 520, 526 (6th Cir. 2011).

The existing record is insufficient to establish that Mukes's dropping the firearm presented a risk of the gun discharging. While the presentence report notes that the firearm was loaded at the time with a round in the chamber, there is no evidence in the record, nor did the

---

[5]The government incorrectly stated that "Mukes does not dispute that he threw a gun while fleeing from police after they ordered him to stop and drop the weapon." CA6 R. 23, Appellee Br., at 23. As Mukes pointed out, he has "repeatedly disputed that he threw a gun while fleeing from police, asserting instead that he dropped the weapon in compliance with officers' commands prior to fleeing." CA6 R. 25, Reply Br., at 3.

[6]We are also skeptical of the government's argument at the sentencing hearing that the enhancement can apply to mere flight, without some other showing of reckless conduct. *See* DE 48, Sent. Tr., Page ID 175. We note that our sister circuits have declined to apply the enhancement in such circumstances. *See United States v. Reyes-Oseguera*, 106 F.3d 1481, 1484 (9th Cir. 1997) ("[I]nstinctive flight alone will not support the enhancement, nor will the armed agent's pursuit."); *United States v. Gould*, 529 F.3d 274, 277 (5th Cir. 2008) (declining to apply the enhancement when the only evidence in the record was that the defendant fled from armed officers instructing him to stop).

district court find, that the "firearm was actually cocked when [Mukes] tossed it."  *May*, 430 F. App'x at 526.

Additionally, the government did not meet its burden of proof to show that others may have been placed in danger.  *See Dial*, 524 F.3d at 787 (requiring government to show that the defendant recklessly created a substantial risk "to another person").  The government asserted at sentencing that Mukes placed himself, bystanders, and police in danger.  But the enhancement does not apply for a risk of injury to the defendant.  *See* U.S.S.G. § 3C1.2 cmt. n.4.  As Mukes pointed out at sentencing, there is no evidence in the existing record about the presence of bystanders, potential or otherwise.  *Cf. Hazelwood*, 398 F.3d at 796 (upholding enhancement where district court found that there were "numerous other vehicles on the road" during the high-speed chase and "at least one other driver . . . was endangered" when "forced to leave the pavement as [the defendant] abruptly turned").  And there is no evidence in the record that the officers were placed in danger when Mukes dropped the gun[7]—a gun that may not have been capable of discharging in its condition.  Indeed, the gun did not discharge when it hit the ground.

Further, the unresolved timing issue of when Mukes dropped the firearm is important to the government's second theory of reckless endangerment.  If Mukes dropped the firearm in response to police commands before fleeing, this enhancement likely would not be applicable, at least in the absence of other countervailing evidence.  To hold otherwise would present the defendant with an untenable choice: drop the firearm upon police orders, resulting in additional prison time under the government's second theory, or refuse to drop the weapon, risk being shot, and still receive additional prison time under the government's first theory—brandishing a firearm during flight.  Section 3C1.2 does not require this result.

Without evidence in the record to support the government's theory that dropping the gun created a substantial risk of death or serious bodily injury to another person, the district court erred in applying the enhancement.

---

[7]By contrast, in *Dial*, the district court applied the enhancement after hearing testimony from the pursuing officer that he had fled into his vehicle to avoid being hit by the defendant during a high-speed chase.  524 F.3d at 788.  We concluded that the officer "[c]learly . . . was the specific other person at risk on these facts."  *Id*.  The record in this case is devoid of those kinds of details that would support the enhancement.

3.

On appeal, the government asserts a third theory of reckless endangerment: running away from a gun discarded in a public place created a substantial risk to another person. "The idea that a discarded gun creates a substantial risk of serious bodily harm to another person is well supported by caselaw." *Brooks*, 763 F. App'x at 440 (declining to apply enhancement on this basis where firearm was unloaded). In *United States v. Stafford*, we upheld application of the enhancement where the defendant had discarded a loaded firearm behind a restaurant "where employees regularly took the restaurant's trash." 721 F.3d 380, 403 (6th Cir. 2013). At sentencing in that case, one of the pursuing officers described the presence of "other pedestrians" in the area when the defendant had discarded the gun. *Id*. We concluded that there was a "significant possibility that a bystander could have come across the loaded weapon and been hurt, or used it to hurt someone else." *Id*. Likewise, in *May*, we determined that it was "reckless to discard a loaded firearm in a public-housing complex where it would likely be found by someone." 430 F. App'x at 526–27 (noting that the defendant "ha[d] not contradicted that factual finding"); *see also Howard*, 301 F. App'x at 449 ("[T]he risk created by throwing a loaded gun near other people is . . . 'substantial.'"); *United States v. Farrow*, 754 F. App'x 417, 421 (6th Cir. 2018) (enhancement appropriate where officers "need[ed] to tackle and disarm [a different] suspect who attempted to pick up the [discarded] gun"). We have also upheld application of the enhancement where the defendant discarded a loaded firearm in a "residential neighborhood" and police had to conduct a search to locate it. *See United States v. Carter*, 817 F. App'x 132, 134 (6th Cir. 2020); *United States v. Tasaki*, 510 F. App'x 441, 445 (6th Cir. 2013).

While this argument presents a well-recognized theory of reckless endangerment, the government did not press it at the sentencing hearing. We have declined to apply this enhancement when "the record does not indicate that the district court considered [a particular theory] as a basis for applying [it]." *May*, 430 F. App'x at 526.

In any event, the existing record is insufficient to support this theory of reckless endangerment. The only information provided about the nature of the place in which the gun was discarded was a cursory mention that the area was a "residential and commercial area," in

response to Mukes's objections to the presentence report. DE 41, 2d Add. to PSR, Page ID 97. Unlike our decisions upholding the enhancement on this theory, there is no evidence in the record about any potential risk that a bystander might have come across the weapon during the brief encounter between Mukes and the police, particularly in light of the late hour of arrest, around three a.m. And unlike *Carter* and *Tasaki*, no search was needed to recover the firearm because Mukes dropped it in plain view of the police officers. In short, the existing record is inadequate to support the government's theory that running from the discarded firearm created a substantial risk of harm.

## C.

The government failed to demonstrate that the § 2K2.1(b)(6)(B) and the § 3C1.2 enhancements were applicable on this record. The district court, therefore, erred in applying them. Because "[n]o special circumstances justified, or even explained, the government's failure to sustain [its] burdens" at sentencing, we remand the case for resentencing on the existing record. *Goodman*, 519 F.3d at 323 (quoting *Leonzo*, 50 F.3d at 1088); *see also United States v. Baker*, 559 F.3d 443, 455 n.10 (6th Cir. 2009) (holding that an intervening Supreme Court decision qualified as a "special circumstance," but the government's "fail[ure] to offer factual evidence" did not). We see no reason why the government "should get a second bite at the apple" on remand, *Goodman*, 519 F.3d at 323, since the "government was entitled to only one opportunity to present evidence on [these] issue[s]." *United States v. Gill*, 348 F.3d 147, 156 (6th Cir. 2003). And because the existing record does not support either enhancement, the district court is not to apply them on remand.

## D.

Finally, Mukes argues that the district court erred by denying him the two-point reduction for acceptance of responsibility. The sentencing guidelines provide that "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." U.S.S.G. § 3E1.1(a). "Entry of a plea of guilty . . . combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct . . . will constitute significant evidence of acceptance of

responsibility." *Id*. cmt. n.3. In determining whether to grant the reduction, the district court may consider whether the defendant "falsely denies, or frivolously contests, relevant conduct that the court determines to be true." *Id*. cmt. n.1(A). But a defendant's unsuccessful challenge to "relevant conduct . . . does not necessarily establish that it was either a false denial or frivolous." *Id*. In other words, crediting the government's version of events over that of the defendant does not, on its own, mean that the defendant may be denied the reduction. Rather, the district court must specifically find that the defendant "falsely denie[d] or frivolously contest[ed]" the facts. A mere determination that the government has met its burden of proof of the facts is not enough.

Mukes pled guilty and filed a statement accepting responsibility for the offense charged in the indictment: illegally possessing a firearm. Because the district court erred in applying the two enhancements, it should consider whether Mukes may receive the reduction for acceptance of responsibility at resentencing. In view of our rulings with respect to the enhancements, there remains a serious question whether any "relevant conduct" that Mukes could "falsely deny" or "frivolously contest" still exists. That question, however, is properly resolved by the district court.

## III.

For the reasons stated, we vacate Mukes's sentence and remand to the district court for resentencing on the existing record, with instructions not to apply either the § 2K2.1(b)(6)(B) or the § 3C1.2 enhancement. On remand, the district court should consider whether Mukes may receive the two-point reduction for acceptance of responsibility, § 3E1.1.