NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0442n.06

No. 22-3540

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Oct 12, 2023
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE NORTHERN DISTRICT OF |
| | ) | OHIO |
| JOSHUA ARMSTRONG, | ) | |
|     Defendant-Appellant. | ) | OPINION |
| | ) | |
| | ) | |

Before: BATCHELDER, GRIFFIN, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. Joshua Armstrong verbally and physically assaulted his wife. Then he fired a gun at the house they shared and led the police on a dangerous chase, before being arrested with a gun in his car. Armstrong pleaded guilty to being a felon in possession of a firearm. The district court sentenced him to 57 months' imprisonment. Armstrong challenges two enhancements that the district court applied when calculating his sentence. We AFFIRM.

I.

In April 2021, Joshua Armstrong verbally and physically assaulted his wife, S.H., at the home they shared. When officers arrived, S.H. reported the assault and told them that Armstrong had punched out a window in the home. S.H. said that Armstrong then left the house, got in his pickup truck that was parked on the street, and "point[ed] a handgun out the window." S.H. "ran inside" and "heard one gunshot." Armstrong then pulled away in his pickup truck. Children were

inside the home at the time Armstrong fired the shot. Another witness told officers that she saw Amstrong "discharge [the] firearm . . . towards the residence." R. 34 Sentencing Transcript, PageID 210. Police recovered one shell casing outside the home.

Police officers soon spotted Amstrong driving his truck. The officers attempted to pull Armstrong over and requested backup when they observed Amstrong reach into the backseat of his vehicle. Armstrong sped off at a high rate of speed, exiting the highway and entering a residential neighborhood, where he fled from the police at a speed of around 60 miles per hour and ran a red light and multiple stop signs. Armstrong nearly caused a police car to crash into another vehicle. The chase eventually ended back at the home he shared with S.H. The police found a .40 caliber handgun, a loaded magazine, and a live .40 caliber shell casing in the car.

A grand jury indicted Armstrong with one count of knowing possession of a firearm as a felon. Amstrong pleaded guilty as charged. The district court sentenced him to 57 months' imprisonment, at the bottom of his Guidelines range of 57-to-71 months. Armstrong appeals.

II.

Armstrong challenges two enhancements applied by the district court when calculating his sentence. In so doing, he contests the procedural reasonableness of his sentence. To fashion a procedurally reasonable sentence, "[t]he court must properly calculate the guidelines range, treat that range as advisory, consider the sentencing factors in 18 U.S.C. § 3553(a), refrain from considering impermissible factors, select the sentence based on facts that are not clearly erroneous, and adequately explain why it chose the sentence." *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018). We review "for abuse of discretion, keeping in mind that factual findings will stand unless clearly erroneous and legal conclusions will stand unless our fresh review leads to a contrary conclusion." *Id.*

*Firearm Enhancement.* Armstrong challenges the district court's application of a four-point enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B), which applies "[i]f the defendant . . . used or possessed any firearm or ammunition in connection with another felony offense." The firearm must have "facilitated, or had the potential of facilitating, another felony offense." *Id.* § 2K2.1 cmt. n.14(A)." "Another felony offense" is any "federal, state, or local offense" that is "punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." *Id.* § 2K2.1 cmt. 14(C). We give "due deference to the district court's determination that the firearm was used or possessed in connection with the other felony." *United States v. Seymour*, 739 F.3d 923, 929 (6th Cir. 2014) (cleaned up).

The government argued at sentencing that Armstrong used the firearm in violation of Ohio Rev. Code § 2923.162. Under that statute, a person is guilty of a felony under Ohio law if he "[d]ischarge[s] a firearm upon or over a public road or highway" and in so doing "create[s] a substantial risk of physical harm to any person or cause[s] serious physical harm to property." Ohio Rev. Code § 2923.162(A)(3) & (C)(2). The government proved that charge by a preponderance of the evidence. S.H. told the officers that Armstrong pointed a gun through the window of his truck, which was parked on the street, and as S.H. ran inside, she heard a gunshot. Another witness corroborated S.H.'s account. And police recovered one shell casing outside the home. In fact, Armstrong conceded both "the shot" and that "the shot was in the direction of the house." R. 34 Sentencing Transcript, PageID 212. Finally, by firing the shot in the direction of the home, he fired in the direction of S.H. and the children who were residing in the home. This was sufficient evidence to conclude that Armstrong discharged a firearm over a public road and created a substantial risk of harm.

Armstrong's main contention is that he did not knowingly discharge the weapon—it was an accidental discharge, he says. The district court noted that "[i]t could have occurred or happened that way" but concluded that "it's more probable, based on what[ was] before [the court], that it was as a result of a discharge in the direction of the home and intentional." R. 34 Sentencing Transcript, PageID 214. In reaching this conclusion, the district court credited the two contemporaneous accounts that Armstrong aimed the weapon at the house and discharged it. We cannot say that factual finding was clearly erroneous.

Armstrong also argues that the district court impermissibly "doubled counted" by applying the firearm enhancements while also sentencing him for being a felon in possession. We disagree. "Impermissible double counting is a procedural error that occurs when precisely the same aspect of the defendant's conduct factors in his sentence in two separate ways." *United States v. Nunley*, 29 F.4th 824, 830 (6th Cir. 2022) (citation and quotation marks omitted). Double counting does not occur when "the defendant is punished for distinct aspects of his conduct." *Id.* (citation omitted). No error occurred here because Amstrong was convicted of possessing a firearm as a felon and had his sentence enhanced for discharging that firearm over a public roadway, thereby punishing him for distinct aspects of his conduct. The district court didn't err by applying the § 2K2.1(b)(6)(B) enhancement. *See United States v. Jackson*, 594 F. App'x 297, 301 (6th Cir. 2015) (affirming the application of the § 2K2.1(b)(6)(B) enhancement to a felon-in-possession charge where the defendant intentionally discharged a firearm at a dwelling in violation of Michigan law).

*Fleeing Enhancement.* Armstrong also challenges the district court's application of a two-point enhancement pursuant to U.S.S.G. § 3C1.2. That enhancement applies when "the defendant recklessly create[s] a substantial risk of death or serious bodily injury to another person

in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2. The enhancement is proper if the government showed that Armstrong "(1) recklessly, (2) created a substantial risk of death or serious bodily injury, (3) to another person, (4) in the course of fleeing from a law enforcement officer, (5) and that this conduct occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." *United States v. Mukes*, 980 F.3d 526, 536 (6th Cir. 2020) (citation omitted). The government must "link a specific aspect of the flight . . . with a specific risk." *Id.* (citation omitted).

The district court determined that the fleeing enhancement applied because while "every high speed chase is not necessarily appropriate for this enhancement," "[t]here was a high speed chase in a residential neighborhood at speeds of 60 and 62 miles an hour." R. 34 Sentencing Transcript, PageID 216. In addition, "there was a near miss, that is a collision of a pursuing vehicle with a white PT Cruiser." *Id.*

Armstrong offers two reasons why the district court was wrong. First, he says that there was not a substantial risk of serious bodily injury, arguing that dashcam photos show that the neighborhood wasn't as "densely populated" as the government argued, and that some risk of collision comes with any fleeing from law enforcement. But Armstrong understates the danger. The neighborhood in which he drove was lined with houses. He drove at a speed of approximately 60 miles per hour, ran a red light and multiple stop signs, and nearly caused a collision between law enforcement and an innocent civilian. This is more than sufficient to establish a substantial risk of serious bodily injury. *See United States v. Rapp*, 39 F. App'x 198, 201 (6th Cir. 2002) ("In this case defendant engaged in a high speed chase which itself created a substantial risk to other motorists. In addition, he increased the potential risk of harm to others by ignoring and driving

through, at a high rate of speed, a stop sign at an intersection with a major road."); *see also United States v. Carrero-Hernandez*, 643 F.3d 344, 349–50 (1st Cir. 2011) (applying enhancement where defendant led law enforcement on a chase "on small back roads in a heavily populated area . . . lined with houses" and "created a high likelihood of collision with pedestrians and/or oncoming traffic, with what could very well have been disastrous results").

Second, Armstrong argues that the district court didn't give sufficient weight to his mental state and his inability to assess the risks of flight. According to Armstrong, he "was aware of nothing but his intense need to flee a stressful situation." Appellant Br. at 34. But the enhancement applies where the defendant "know[s] or h[as] reason to know that he is fleeing from a law enforcement officer." *United States v. Hayes*, 135 F.3d 435, 438 (6th Cir. 1998). The PSR explained that Armstrong admitted to knowing that "the officers were behind him when he fled from them." Yet he nonetheless continued to lead a 60-mph chase in a residential neighborhood and ignored a red light and stop signs. What's more, in his sentencing memorandum, he admitted that he fled in an attempt "to decipher a way out of the serious situation he had created" and that while so doing, "he disabled and scattered parts to the gun he had in his car, attempting to remove the danger it posed." R. 22 Sentencing Memorandum, PageID 153. Armstrong was sufficiently aware and able to appreciate the significance of the situation he had created. The district court didn't err by applying the § 3C1.2 fleeing enhancement.

\* \* \*

We AFFIRM.