**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-4261**

UNITED STATES OF AMERICA,

　　　　Plaintiff – Appellee,

v.

KEVIN LEE DENNINGS,

　　　　Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Malcolm J. Howard, Senior District Judge.  (5:17-cr-00227-H-1)

Argued:  January 31, 2019　　　　　　　　　　Decided:  April 24, 2019

Before AGEE and FLOYD, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Affirmed by published opinion. Judge Agee wrote the opinion, in which Judge Floyd and Senior Judge Traxler joined.

**ARGUED:**  Eric Joseph Brignac, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Amy N. Okereke, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**  G. Alan DuBois, Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellant.  Robert J. Higdon, Jr., United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, Kristine L. Fritz, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

AGEE, Circuit Judge:

In this appeal, Kevin Lee Dennings contends that the district court improperly calculated his Sentencing Guidelines range by including an offense characteristic enhancement for reckless endangerment during flight under U.S.S.G. § 3C1.2. For the reasons set out below, we affirm.

I.

In March 2017, Dennings approached a man while wearing a t-shirt around his head and face. The man observed Dennings pull a firearm out of his pocket. Believing he was being robbed, the man punched Dennings. In the scuffle that followed, Dennings' firearm discharged twice, although it's not clear whether the discharge was intentional or accidental. No one was injured by the gunfire.

When Dennings heard police sirens, he disengaged from the scuffle and fled. A police officer in the area saw Dennings running with a "garment over his face" and pursued him. J.A. 78. The officer stated that during the chase, he observed "that Dennings' right hand was not empty and freely swinging like his left hand, but [the officer] was unable to determine if Dennings was digging in his pocket or holding onto something." J.A. 78. Dennings ignored the officer's repeated instructions to stop, but at some point Dennings fell to the ground and the officer landed on top of him. Although Dennings said he "gave up," he was laying on his right arm and was "hesitant to relinquish control of it." J.A. 79. Police then discovered the loaded firearm in Dennings' jacket pocket.

2

A grand jury indicted Dennings on the charge of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Dennings pleaded not guilty without a written plea agreement.

Most of the presentence investigation report (the "PSR") was uncontested. For instance, Dennings did not challenge the PSR's description of the offense conduct. Nor did he object to the PSR setting his criminal history at V or the base offense level at twenty and then modified upwards seven levels because the firearm was discharged and downwards by three levels because of Dennings' acceptance of responsibility.

But Dennings did object to the imposition of a two-level enhancement to his offense level for "recklessly creat[ing] a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer" under U.S.S.G. § 3C1.2. He asserted that although he had fled from police, flight while possessing a firearm in the pocket of his coat was insufficient to create a substantial risk of death or serious bodily injury.

The district court considered this argument, but denied Dennings' objection, stating:

> Dennings fled from the police while carrying a loaded gun, and the gun had recently been discharged on the same date in another action, and he was fleeing from the officers. And I believe that compares to the basis [for applying the enhancement] in the Fourth Circuit . . . and . . . reinforced at least by two other circuits. There is no circuit that I find that has followed [Dennings' view of the Guidelines].

J.A. 46. Based on that decision, the district court observed that Dennings' total offense level would be set at twenty-six, thereby establishing a Guidelines range of 110 to 137

3

months' imprisonment, which was capped by the statutory maximum of 120 months' imprisonment. After hearing from the parties on the 18 U.S.C. § 3553(a) sentencing factors, the district court "adopt[ed] the findings in the presentence report as credible and reliable," decided that a variance was not warranted, and sentenced Dennings to a term of 110 months' imprisonment. J.A. 53–54.

Dennings noted a timely appeal, and we have jurisdiction under 18 U.S.C. § 3582 and 28 U.S.C. § 1291.

## II.

We review sentences "under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41 (2007). Improperly calculating the advisory Guidelines range would constitute a procedural error that may require resentencing. *United States v. Hargrove*, 701 F.3d 156, 161 (4th Cir. 2012) (observing that procedural errors during sentencing, such as improperly calculating a Guidelines range, are subject to harmless-error review). In assessing whether a sentencing court properly applied the Guidelines, "we review the court's factual findings for clear error and its legal conclusions de novo." *United States v. Allen*, 446 F.3d 522, 527 (4th Cir. 2006).[1]

On appeal, Dennings argues the district court miscalculated his Guidelines range because it erroneously imposed the two-level enhancement under § 3C1.2. Because instinctive flight is not enough to warrant imposition of the enhancement, *United States v.*

---

[1] We have omitted internal quotation marks, alterations, and citations here and throughout this opinion, unless otherwise noted.

4

*John*, 935 F.2d 644, 648 (4th Cir. 1991), Dennings asserts that instinctive flight while possessing a firearm in a jacket pocket would not trigger the enhancement either. This is so, he contends, because armed flight while a firearm is secured to the person is the safest instinctive flight option available to an armed individual. He claims that any other course of conduct during flight would pose a greater risk. In addition, he maintains that because the enhancement applies to other circumstances—such as when an individual holds, waives, or tosses a firearm aside while fleeing from police—applying the enhancement to his course of conduct would mean that the only available alternative to an armed individual would be to surrender. We disagree with Dennings' arguments and reading of the record.

### III.

Our review begins with the text of § 3C1.2, which states: "If the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase [the offense level] by 2 levels." U.S.S.G. § 3C1.2. The application notes elaborate that "reckless" has the same definition as used in the involuntary manslaughter provision, *see* app. n.2, which describes "a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross

deviation from the standard of care that a reasonable person would exercise in such a situation." U.S.S.G. § 2A1.4, app. n.4.[2]

We have limited case law considering the scope of § 3C1.2 and have not previously examined § 3C1.2's applicability to armed flight on foot in a published opinion. But in *United States v. Carter*, 601 F.3d 252 (4th Cir. 2010), we affirmed the district court's decision to impose the § 3C1.2 enhancement based on an unarmed individual fleeing from police on foot and entering a third party's unlocked apartment without permission. *Id.* at 253. We explained that "there is a substantial risk that is inherent at any time anyone enters another's home without permission" because the occupant may respond with "violence and force to prevent such entry" or upon returning home and discovering that individual. *Id.* at 255. Either of these circumstances could lead to a "risk of serious bodily injury or death to the resident and the pursuing officers, as well as other nearby residents and neighbors." *Id.* at 255. We also reiterated that the Guideline is based on the *risk* created by the defendant's conduct and does not require "that his conduct actually cause[d] physical harm." *Id.* at 256.

We have also issued several unpublished cases involving armed flight on foot and have affirmed the district court's imposition of § 3C1.2's enhancement when the defendant fled while "holding a loaded firearm," *United States v. Page*, 169 F. App'x

---

[2] Dennings challenges only whether his conduct "recklessly created a substantial risk of death or serious bodily injury." He does not challenge that his acts occurred "in the course of fleeing from a law enforcement officer." *See* J.A. 44 (agreeing with the district court during the sentencing hearing that Dennings "resisted arrest"); U.S.S.G. § 3C1.2 app. n.3 (stating that "during flight" should be "construed broadly and includes preparation for flight" as well as conduct that "occurs in the course of resisting arrest").

782, 785 (4th Cir. 2006) (per curiam), engaged in a "brief struggle with [police] officers while he was armed with [a] pistol," *United States v. Williams*, 278 F. App'x 279, 280 (4th Cir. 2008) (per curiam), and pulled a firearm "from under his shirt and dropp[ed] it as he ran," *United States v. Jefferson*, 58 F. App'x 8, 9 (4th Cir. 2003) (per curiam); *cf. United States v. Brown*, No. 17-4544, 2019 WL 1410697, at *5 (4th Cir. March 28, 2019) (affirming imposition of § 3C1.2 enhancement when the defendant "jumped out of [a] still-moving car with a firearm in his hand, fled on foot, and threw the firearm away"); *United States v. Grate*, 81 F. App'x 451, 453 (4th Cir. 2003) (same when the defendant initially held the firearm and then discarded it during flight from police through a crowded parking lot); *United States v. Washington*, 80 F. App'x 850, 850–51 (4th Cir. 2003) (same when the armed defendant repeatedly tried to "retrieve something from his right pants pocket" both during a flight by foot and once detained on the ground).

Of course, none of these cases are binding on us, save to the extent their reasoning is persuasive. *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 219 (4th Cir. 2006) (stating that unpublished "decisions have no precedential value, and they are entitled only to the weight they generate by the persuasiveness of their reasoning"). But in these unpublished decisions, we have reasoned, for example, that a physical altercation "in which all the parties are armed carries an obvious risk that the struggle might escalate" even where no injury results and the defendant's firearm remains out of plain view. *Williams*, 278 F. App'x at 281. We have also concluded that the requisite risk is created during a defendant's repeated efforts to reach into his waistband because the police could not know his intent and his conduct "could easily have caused the officers to shoot in

7

self-defense." *Washington*, 80 F. App'x at 851. And although we have previously agreed with a defendant who argued that § 3C1.2 did not apply to "mere" armed flight—an argument Dennings also makes—we then distinguished that defendant's conduct by noting he had done "more than carry a firearm." *Jefferson*, 58 F. App'x at 10. We explained that by dropping a loaded firearm as he ran, the defendant had created a "risk that the pistol would discharge accidentally when dropped which created a substantial risk of injury to the pursuing officers" and, if "the officers [had] not found the gun, it would have constituted a substantial risk of injury to the community." *Id.*

We do not need to reassess whether mere armed flight would warrant application of § 3C1.2 because Dennings did not engage in mere armed flight. Instead, as in the above-cited cases, his situation involved flight-plus-something more. Specifically, the PSR—which Dennings did not challenge as to its factual findings[3]—recounts that he fled

---

[3] To the extent that Dennings contends on appeal that the Court cannot rely on the PSR's recitation of the offense conduct, we disagree. The record demonstrates that Dennings' sole objection in the district court was whether the facts described in the PSR merited imposition of § 3C1.2's enhancement. While the district court and Dennings engaged in a colloquy about the legal significance of those facts, at no time did he challenge the PSR's factual recitation of the offense conduct. When a defendant fails to object to the PSR's factual findings, the district court may rely on them without engaging in further inquiry. *E.g.*, *United States v. Revels*, 455 F.3d 448, 451 n.2 (4th Cir. 2006) ("[W]hen a defendant fails to properly object to the relevant findings in his PSR, the government meets its burden of proving those facts by a preponderance of the evidence, and the district court is free to adopt the findings of the presentence report without more specific inquiry or explanation"). And although the district court did not mention these facts as part of its ruling, it referred to them during the colloquy about the enhancement's applicability, and it later adopted—again, without objection—"the findings in the [PSR] as credible and reliable[.]" J.A. 53. Further, to the extent that our reasoning differs in any respect from the district court's articulated reasons, we are permitted to do so. *See United States v. Smith*, 395 F.3d 516, 519 (4th Cir. 2005) ("We are not limited to evaluation of (Continued)

8

from police sirens after having discharged a firearm. The police officer who gave chase "observed [him] wearing a garment over his face, running." J.A. 78. During the chase, the police officer noticed that Dennings' "right hand was not empty and freely swinging like his left hand," but he could not determine if Dennings "was digging into his pocket or holding onto something." J.A. 78. Dennings twice ignored the police officer's instructions to stop. And once the two men were on the ground, Dennings "was lying on his right arm and was hesitant to relinquish control of it." J.A. 79. The firearm was later recovered from Dennings' jacket pocket. In sum, the record reflects that while Dennings was running, he behaved differently with his right hand than his left, his right hand was holding or reaching near a firearm located in his jacket pocket, and he "was hesitant" in relinquishing control of his right arm when that arm was also on or near a firearm.

Rather than being mere "instinctive flight," Dennings' conduct created a substantial risk of death or serious bodily injury as required for § 3C1.2 to apply. "[E]ndangering others during flight or in the course of resisting arrest involves active, willful behavior; in contrast, mere flight or disagreeableness during an encounter involves more passive or instinctive conduct." *John*, 935 F.3d at 648. Here, while armed, Dennings ignored repeated instructions from the officer to stop. As he did so, his right arm and hand were moving in a way that suggested he had or was reaching for something. And even once the police officer halted Dennings' run, he continued to resist

the grounds offered by the district court to support its decision, but may affirm on any grounds apparent from the record.").

9

arrest as evidenced by the officer's statement that Dennings had fallen on his right arm "and was hesitant to relinquish control of it." J.A. 79. Regardless of whether Dennings was carrying the firearm, putting it back in his pocket, reaching to retrieve it from his pocket, or trying to keep it inside his pocket as he ran, his movements "created a substantial risk of death or a serious bodily injury to another person." That risk arose from two possibilities: (1) Dennings' firearm could have discharged, intentionally or accidentally, and (2) Dennings' behavior could have led the pursuing officer to draw his own firearm in self-defense. Either of these circumstances would have created a risk to the police officer chasing after Dennings, the other officers who were responding to the report of gunshots, or innocent bystanders in the area. That no one was injured during these events is of no moment because § 3C1.2 requires only that the defendant's conduct create a *risk* of that occurring.

Furthermore, Dennings' conduct was reckless. The police officer had no way of knowing the intent behind his movements, including the possibility that Dennings was reaching for a firearm. Dennings thus did not exercise reasonable care by running with a loaded firearm after being ordered to stop and moving his hands in a way that drew attention to the risk he was reaching for a firearm. Accordingly, the district court did not err in imposing the § 3C1.2 enhancement because Dennings' behavior "carrie[d] an obvious risk" that the situation "might escalate to the point that a firearm [was] used, or discharge[d] accidentally." *Williams*, 278 F. App'x at 281.

Our conclusion is supported by decisions in several sister circuits that armed flight on foot coupled with hand movements toward or near a firearm hidden on the defendant's

10

person can satisfy the conditions for imposing § 3C1.2's enhancement. *See United States v. Matchett*, 802 F.3d 1185, 1197–98 (11th Cir. 2015) (affirming the decision to impose a § 3C1.2 enhancement when defendant wrestled with a police officer for three minutes while the defendant had a loaded firearm in his pocket); *United States v. Easter*, 553 F.3d 519, 521–24 (7th Cir. 2009) (affirming the same when the defendant—while running— reached toward the butt of a loaded gun, drew it out, and then fumbled with it); *United States v. Lee*, 199 F.3d 16, 17 (1st Cir. 1999) (applying the same "substantial risk" requirement in § 3A1.2 to note that "whatever [the defendant's] purpose, his efforts to seize his gun did create a substantial risk of bodily injury, whether from accidental discharge or the threat of fire from the police").

For example, in *United States v. Bates*, 561 F.3d 754 (8th Cir. 2009), the Eighth Circuit affirmed the district court's decision to apply § 3C1.2 to the defendant's Guidelines range calculation based on the defendant's decision to (1) jump from a moving vehicle that police were pursuing, (2) ignore the commands of police officers to stop, (3) flee on foot while armed with a loaded weapon, and (4) "intentionally struggle[] on the ground with the officer and continually reach[] toward his waistband during the altercation." *Id.* at 757. The Eighth Circuit rejected the defendant's argument that the enhancement should not apply because he had not "brandish[ed] his weapon during the [foot] chase." *Id.* In so doing, the court observed that Bates' own intentional behavior was sufficient to show by a preponderance of the evidence that he "recklessly created a substantial risk of serious harm to others while fleeing from police." *Id.* It did not matter,

11

therefore that police did not discover the loaded firearm in the defendant's waistband until after he had been placed in handcuffs. *See id.* at 756.

Dennings, like the defendant in *Bates*, ignored repeated commands from a police officer to stop running, continued to flee on foot while armed with a loaded weapon, and appeared to be holding or reaching toward his right jacket pocket, where a loaded firearm was later discovered. This conduct satisfies § 3C1.2's requirement of recklessly creating a substantial risk of death or serious bodily injury even though more egregious conduct also falls within the scope of the Guideline.

IV.

For the reasons stated above, we hold that the district court did not commit procedural error by including § 3C1.2's two-level enhancement in calculating Dennings' Guidelines range. Accordingly, we affirm the judgment of the district court.

*AFFIRMED*