**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-4091

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

SHAMAURI LEVON SHIVERS,

Defendant – Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Asheville.  Martin K. Reidinger, Chief District Judge.  (1:20-cr-00038-MR-WCM-1)

Argued:  October 27, 2022                    Decided:  December 27, 2022

Before AGEE and HARRIS, Circuit Judges, and Lydia K. GRIGGSBY, United States District Judge for the District of Maryland, sitting by designation.

Vacated and remanded with instructions by published opinion. Judge Agee wrote the opinion in which Judge Harris and Judge Griggsby joined.

**ARGUED:**  Joshua B. Carpenter, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina, for Appellant.  Anthony Joseph Enright, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.  **ON BRIEF:**  Anthony Martinez, Federal Public Defender, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant.  Dena J. King, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

AGEE, Circuit Judge:

Shamauri Shivers appeals his sentence for Hobbs Act robbery, asserting that the district court erred in applying the U.S.S.G. § 3C1.2 sentencing enhancement for reckless endangerment during flight when he discarded a loaded firearm in view of pursuing law enforcement officers. As explained below, we agree with Shivers that the record does not reflect sufficient evidence that he created a substantial risk of death or serious bodily injury to another person when he fled from police. Therefore, the district court clearly erred by applying the enhancement. Further, we find that this error was not harmless because the district court declined to state that it would have applied the same sentence regardless of the enhancement, although it was asked to do so. Accordingly, we vacate Shivers' sentence and remand to the district court for resentencing without application of the § 3C1.2 enhancement.

I.

Under U.S.S.G. § 3C1.2, a defendant will receive a two-level sentencing enhancement "[i]f [he or she] recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2. "Reckless" is defined as "a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." *Id.* § 3C1.2 cmt. n.2; *id.* § 2A1.4 cmt. n.1. "To another person"

2

refers to "any person, except a participant in the offense who willingly participated in the flight." *Id.* § 3C1.2 cmt. n.4.

We recently applied § 3C1.2 in *United States v. Dennings*, 922 F.3d 232, 238 (4th Cir. 2019). In that case, while the defendant fled from police, the pursuing officer observed that his right hand was not empty but "was unable to determine if [he] was digging in his pocket or holding onto something." *Id.* at 234. The defendant eventually fell, and the officer landed on top of him. *Id.* They struggled, and the defendant was "hesitant to relinquish control of" his right arm. *Id.* Officers then located a loaded firearm in his jacket pocket. *Id.* This Court discerned no clear error in the district court's finding that these circumstances justified the application of § 3C1.2 because they created a risk that (1) the firearm could have discharged, and (2) the pursuing officer could have drawn his firearm in self-defense. *Id.* at 238. Further, the defendant's conduct was reckless—by "moving his hands in a way that drew attention to the risk that he was reaching for a firearm," he did not exercise reasonable care. *Id.* Therefore, the Court observed that, assuming mere armed flight would not warrant the application of § 3C1.2, the situation presented involved "flight-plus-something more," thus justifying the enhancement. *Id.* at 237.

II.

With this baseline for understanding the law underlying Shivers' arguments, we turn to the undisputed facts.

In January 2019, Shivers robbed a convenience store at gunpoint in the middle of the night. An off-duty police detective who provided security for the store observed Shivers

3

committing the robbery and contacted the police department. The police responded immediately, set up a perimeter, and confronted Shivers as he exited the store. Shivers ran, and officers pursued on foot. As they ran, one officer saw Shivers discard a revolver in the street. Police eventually caught up to Shivers, and when an officer confronted Shivers with her service rifle, he submitted to being handcuffed without incident.

Shivers was later charged with and pleaded guilty to Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) as well as brandishing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii).

Before sentencing, a probation officer prepared a Presentence Investigation Report ("PSR") that recommended a two-level enhancement to Shivers' offense level pursuant to § 3C1.2. Shivers objected to the enhancement, claiming that he did not create a substantial risk of death or serious bodily injury because he did not point his firearm at law enforcement officers and did not resist arrest. Instead, he discarded the firearm shortly after leaving the convenience store and surrendered to police after a foot pursuit. He argued that under *Dennings*, a § 3C1.2 enhancement required something more than a passive or instinctive act, and his flight lacked that something more.

Probation responded as follows:

> [O]fficers had established a perimeter around the store prior to the defendant exiting. When he did come out of the store, loud clear commands were given to Shivers to get on the ground while law enforcement pointed firearms at him. The defendant disregarded those commands and fled from authorities while armed. Furthermore, during flight in a congested area of downtown Asheville, Shivers threw his firearm in the street. In order to throw his firearm during flight, Shivers would have had to make an active movement with his arm. Such a movement by a defendant known to be armed with a firearm could easily have been interpreted by pursuing law enforcement as

4

aggressive and dangerous conduct. When the gun was secured, it was found to be loaded with six live rounds.

. . . . Thus, despite the fact that Shivers subsequently surrendered to law enforcement after he fled, the Probation Office maintains that the defendant's conduct was more than mere possession of a firearm, that it did recklessly create a substantial risk of death or serious injury, and that the enhancement has been properly applied.

J.A. 160–61.

The district court overruled Shivers' objection to the PSR and adopted the recommendation to apply the § 3C1.2 enhancement, although it found the issue to be "a very close call." *Id.* at 101. The court agreed that the enhancement required "something more than mere passive flight," but the "something more" need not be "much more"— there simply must be "something that can be specifically identified as giving rise to a potential danger to a bystander, to a law enforcement officer, or even to the suspect." *Id.* And the court found that "something more" in Shivers' case for two reasons. *Id.* First, the court reasoned that for Shivers to throw or drop the firearm, he had to reach for it, which could have caused a law enforcement officer to react with deadly force. Second, the court noted that throwing the firearm could have caused it to accidentally discharge and thereby "potentially caus[ed] harm to a bystander, or even the suspect himself." *Id.* at 101–02.

With the § 3C1.2 enhancement, Shivers' sentencing range was 121 to 130 months' imprisonment.[1] He asked the court for a 114-month sentence, asserting that his history and characteristics warranted a downward variance. The Government opposed, arguing that the

---

[1] Without the enhancement, Shivers' aggregate sentencing range would have been 114 to 121 months' imprisonment.

seriousness of the offense and Shivers' choice to flee warranted a 121-month sentence. The court sentenced Shivers to 114 months' imprisonment. The court explained that the facts justifying the application of the enhancement were so slight that some reduction of the sentence was warranted. The court also reasoned that Shivers' history and characteristics called for a lower sentence.

The Government asked if the court would "be willing to say that even if the objection to the presentence report [regarding the § 3C1.2 enhancement] should have been sustained that the Court still believes that 114 months would be the appropriate sentence." *Id.* at 123–24. The court responded: "I will go so far as to say on the record that the sentence is based on the facts that are before the Court with regard to sentencing and the application of the factors under 3553(a). The technical calculation of the guideline range is not really a significant factor in that calculation." *Id.* at 124. Consistent with this statement, in the Statement of Reasons, the court declined to check a box indicating that "[i]n the event the guideline determination(s) made in this case are found to be incorrect, the court would impose a sentence identical to that imposed in this case." *Id.* at 165.

III.

When considering a challenge to a district court's application of the Guidelines, this Court reviews factual findings for clear error and legal conclusions de novo. *United States v. Allen*, 446 F.3d 522, 527 (4th Cir. 2006). Specifically, the application of the § 3C1.2 enhancement is reviewed for clear error. *United States v. Carter*, 601 F.3d 252, 254 (4th Cir. 2010). The Court will not find clear error unless "on the entire evidence, we are left

6

with the definite and firm conviction that a mistake has been committed." *United States v. Barnett*, 48 F.4th 216, 220 (4th Cir. 2022) (quoting *United States v. Manigan*, 592 F.3d 621, 631 (4th Cir. 2010)).

Shivers argues that the district court's application of the § 3C1.2 enhancement erroneously rested upon (1) the risk that Shivers' actions posed to himself, (2) the unsupported assumption that Shivers reached for the firearm to throw it, which presented the risk that police might fire in self-defense, and (3) the risk posed by an accidental discharge. We will address each argument in turn.

## A.

We begin with Shivers' threshold claim that the district court procedurally erred by applying the § 3C1.2 enhancement.

Shivers first contends that the district court erred by considering the possible risk of harm to Shivers himself. We agree. The plain text of § 3C1.2 indicates that for the enhancement to apply, the defendant must create a risk of harm to "another person," which is defined to include "any person, *except a participant in the offense* who willingly participated in the flight." U.S.S.G. § 3C1.2 & cmt. n.4 (emphasis added). Shivers indisputably participated in the robbery and then willingly fled from the police. Therefore, the district court clearly erred in applying the § 3C1.2 enhancement based on possible harm to Shivers.

Next, Shivers claims that the district court's finding that he must have reached for the firearm in order to throw it was clearly erroneous. The Government responds that the district court's finding was a "reasonabl[e] infer[ence]." Response Br. 18.  However, at

7

oral argument, the Government was unable to identify any evidence in the record to support the district court's inference that Shivers pulled the firearm out of his pocket as opposed to simply holding it. Oral Argument at 28:24–29:18, *United States v. Shivers,* No. 21-4091 (4th Cir. Oct. 27, 2022), https://www.ca4.uscourts.gov/OAarchive/mp3/21-4091-20221027.mp3. Nor is there evidence to suggest that Shivers made other suspicious or furtive hand movements that could have prompted a dangerous response from police.[2] The record lacks definitive evidence to establish whether Shivers simply dropped the firearm on the ground or threw it as if tossing a ball or some other object. In fact, there was no testimony from the pursuing officers as to what exactly Shivers did with the firearm, although the Government could have presented such evidence. Because no evidence supports the district court's finding that Shivers reached for the gun or that he acted in a way that could have caused a law enforcement officer to react with deadly force, the district court committed clear error. *See Manigan*, 592 F.3d at 631 (explaining that this Court has found clear error where "the findings under review are not supported by substantial evidence" (cleaned up)); *see also United States v. Parker*, 30 F.3d 542, 552–53 (4th Cir. 1994) (rejecting certain inferences that had no basis in record evidence and declining the government's invitation to "make up" evidence not in the record).

---

[2] *Compare* J.A. 142 ("[A pursuing officer] noticed the suspect throw a silver revolver in the street as he ran[.]"), *with Dennings*, 922 F.3d at 238 ("[The defendant's] right arm and hand were moving in a way that suggested he had or was reaching for something."). This first statement was contained within the PSR, but it was drafted by the U.S. Attorney's Office and is not tied to evidence in the record. Had the officer testified to this effect, that may have been enough to sustain the enhancement depending on the full context of that testimony.

Third, Shivers argues that the district court should not have relied on the risk posed by an accidental discharge because there is no evidence relating to such a risk. Again, we agree. "The government bears the burden of proving the facts necessary to establish the applicability of [a sentencing] enhancement by the preponderance of the evidence." *United States v. McGee*, 736 F.3d 263, 271 (4th Cir. 2013) (alteration in original) (quoting *United States v. Garnett*, 243 F.3d 824, 828 (4th Cir. 2001)). But here, the Government has not identified any evidence from which the district court could have concluded that there was a substantial risk of the firearm discharging when it hit the ground. *See United States v. Mukes*, 980 F.3d 526, 538 (6th Cir. 2020) (finding that the district court erred in applying the § 3C1.2 enhancement in part because the record was "insufficient to establish that Mukes's dropping the firearm presented a risk of the gun discharging"). Nor is there evidence that Shivers struggled with the police, thereby increasing the risk that his firearm could have discharged intentionally or accidentally. *See Dennings*, 922 F.3d at 238. Therefore, we conclude that the district court clearly erred in finding that the risk of accidental discharge warranted the application of § 3C1.2.

The Government contends that regardless of the risk—or lack of it—created by reaching for or throwing the firearm, the imposition of the § 3C1.2 enhancement was warranted because Shivers fled while holding a loaded firearm. But we have never held in a published opinion that armed flight alone is enough to justify the application of the

9

§ 3C1.2 enhancement.[3] Instead, we have required "something more" than mere instinctive armed flight. *Id.* at 237; *see id.* at 235 ("[I]nstinctive flight is not enough to warrant imposition of the enhancement."); *see also United States v. John*, 935 F.2d 644, 648 (4th Cir. 1991) ("For example, mere flight from an arresting officer would not, by itself, warrant an enhancement. . . . The cases suggest that endangering others during flight . . . involves active, willful behavior; in contrast, mere flight or disagreeableness during an encounter involves more passive or instinctive conduct."). This approach comports with the plain language of § 3C1.2, which provides for the application of the enhancement only where there is evidence that the defendant "recklessly created a substantial risk of death or serious bodily injury to another person" while fleeing. U.S.S.G. § 3C1.2. Had the Sentencing Commission wanted this enhancement to apply to mere armed flight instead of to flight plus a specific finding of reckless creation of risk, it could have written the Guideline in that way. It chose not to do so, and this Court will not "rewrite the Guidelines to bring about a certain result." *United States v. Haas*, 986 F.3d 467, 480 (4th Cir. 2021).

---

[3] This Court admittedly has some inconsistent unpublished authority on whether mere armed flight is sufficient to warrant the application of the § 3C1.2 enhancement. *Compare United States v. Jefferson*, 58 F. App'x 8, 10 (4th Cir. 2003) ("[The defendant] posits that merely carrying a gun does not constitute reckless endangerment. He is correct to that extent."), *with United States v. Page*, 169 F. App'x 782, 785 (4th Cir. 2006) ("Because [the defendant] fled from police officers while holding a loaded firearm, we conclude the district court did not clearly err in its application of § 3C1.2."). However, these unpublished opinions "have no precedential value, and they are 'entitled only to the weight they generate by the persuasiveness of their reasoning.'" *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 219 (4th Cir. 2006) (quoting *Hupman v. Cook*, 640 F.2d 497, 501 & n.7 (4th Cir. 1981)).

In addition, the Government asserts that the application of the sentencing enhancement was warranted because a community member could have found the gun instead of the police and hurt himself or someone else. But there is no evidence to support that assertion, rendering it purely speculative. To the contrary, the evidence shows that the gun was discarded in view of a police officer within an established perimeter, and there is no evidence that the gun could have gone unnoticed by the officer or that there were bystanders in the area who could have picked up the gun. *See Mukes*, 980 F.3d at 538 (finding that the Government did not meet its burden of showing that community members may have been placed in danger because there was no evidence about the presence of bystanders).

For these reasons, we conclude that the district court clearly erred in applying the § 3C1.2 sentencing enhancement for reckless endangerment during flight where there was no evidence that Shivers did anything more than flee while armed and then discard his weapon in view of police. In most cases, it should not be difficult for the Government to present sufficient evidence to justify the imposition of the enhancement, but the record here simply lacks such evidence. We therefore hold that by failing to put on the necessary evidence that Shivers' conduct created a substantial risk, the Government failed to carry its burden of proof, and the district court thus clearly erred in applying the enhancement when calculating Shivers' Guidelines range.

B.

The foregoing conclusion does not end our analysis because an error in the application of a sentencing enhancement must be examined for harmlessness before

11

resentencing is warranted. *See United States v. Hargrove*, 701 F.3d 156, 161 (4th Cir. 2012). Harmless-error review requires "knowledge that the district court would have reached the same result even if it had decided the guidelines issue the other way" and "a determination that the sentence would be reasonable even if the guidelines issue had been decided in the defendant's favor." *Id.* at 162 (quoting *United States v. Savillon-Matute*, 636 F.3d 119, 123 (4th Cir. 2011)). The burden is on the party defending the court's ruling to prove that the error "did not have a substantial and injurious effect or influence on the result." *United States v. Patterson*, 957 F.3d 426, 440 (4th Cir. 2020) (quoting *United States v. Lynn*, 592 F.3d 572, 585 (4th Cir. 2010)). Here, that is the Government.

At Shivers' sentencing hearing, the Government specifically asked if the court would be willing to find that even if the enhancement should not have been applied, it would nevertheless have imposed a 114-month sentence. The court declined to do so, responding instead that the sentencing was based on the facts of the case and that "[t]he technical calculation of the guideline range" was not "a significant factor." J.A. 124.

The Government relies on this exchange to support its contention that any error in applying the enhancement was harmless. But even if the Guidelines range—and, therefore, the enhancement—was not a "significant factor" in the court's sentence, the district court did not say that the enhancement was irrelevant to its sentencing decision despite several opportunities to do so. *Compare United States v. McDonald*, 850 F.3d 640, 644 (4th Cir. 2017) ("The district court noted that, had it not applied the ACCA, it would have arrived at the same 188-month sentence[.]"), *and United States v. Mills*, 917 F.3d 324, 331 (4th Cir. 2019) ("[T]he court expressly stated that 70 months' imprisonment is the sentence that

12

the Court would have imposed even had the other range been the applicable one[.]" (cleaned up)), *with* J.A. 165 (Statement of Reasons) (failing to check the box indicating that "[i]n the event the guideline determination(s) made in this case are found to be incorrect, the court would impose a sentence identical to that imposed in this case").

Given the district court's arguable reliance on both the enhancement and Shivers' history and characteristics in imposing a sentence below the Guidelines range, it is plausible that the district court may again impose a below-Guidelines sentence if this case were remanded for resentencing.[4] Further, where it is unclear whether a district court would impose a lower sentence, courts have erred on the side of remanding for resentencing. *See United States v. Lynn*, 592 F.3d 572, 585 (4th Cir. 2010) (remanding for resentencing where "the extent of harm caused by a procedural sentencing error was not immediately clear"); *see also Molina-Martinez v. United States*, 578 U.S. 189, 201 (2016) ("Where, however, the record is silent as to what the district court might have done had it considered the correct Guidelines range, the court's reliance on an incorrect range in most instances will suffice to show an effect on the defendant's substantial rights. Indeed, in the ordinary case a defendant will satisfy his burden to show prejudice by pointing to the application of an incorrect, higher Guidelines range and the sentence he received thereunder.").

Therefore, we conclude that the Government failed to meet its burden of showing

---

[4] The error is not harmless even though Shivers received a sentence that falls within the Guidelines range that will apply without the enhancement. The district court could again rely on Shivers' history and characteristics to impose a below-Guidelines sentence. Whether the district court determines to do so is within its discretion.

13

that any error regarding the application of the sentencing enhancement "did not have a substantial and injurious effect or influence on the result." *Patterson*, 957 F.3d at 440 (quoting *Lynn*, 592 F.3d at 585).[5]

## IV.

For the foregoing reasons, we vacate Shivers' sentence and remand for resentencing without application of the § 3C1.2 enhancement.

*VACATED AND REMANDED WITH INSTRUCTIONS*

---

[5] Because we find that the district court may have imposed a different sentence if it had not applied the § 3C1.2 enhancement, we need not determine whether the sentence was reasonable. *See Hargrove*, 701 F.3d at 162.

14