NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0254n.06

No. 22-3471

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 05, 2023
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) |
| | ) |
| ANTHONY POLANDO McGHEE, III, | ) |
| Defendant-Appellant. | ) |
| | ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

OPINION

Before: GRIFFIN, KETHLEDGE, and THAPAR, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Anthony Polando McGhee, III, pleaded guilty to unlawfully possessing a firearm, for which the district court imposed a consecutive within-Guidelines sentence of 92-months' imprisonment. On appeal, he challenges his sentence on three grounds. Because we find one of his claims meritorious, we vacate defendant's sentence and remand for resentencing.

I.

The relevant facts are set forth in the presentence report, which the district court adopted without change. It serves as the sole basis supporting the Guidelines enhancements that are at issue:

> On October 21, 2020, Cleveland Police Department (CPD) received a call over the radio for shots fired in the area of 2853 East 119th Street in Cleveland, Ohio. The dispatcher reported that approximately 20 shots had been fired, and four males were observed running away from the area with what appeared to be handguns and rifles. The officers responded to the area and they observed four males fitting the descriptions broadcasted by the dispatcher. Once the four males noticed the police

cruiser turning around, they all began running. The officers exited their cruiser and began pursuing the males on foot. Three males jumped the fence as the officers approached, and one of the officers observed one of the individuals toss a firearm over the fence. The fourth male, who was later identified as the defendant, was observed throwing a black firearm with an extended magazine over the fence, and he was apprehended as he was attempting to climb over the fence.

After the defendant was detained, officers located a black Glock, model 27, .40 caliber pistol bearing serial number MAR717, loaded with 15 rounds of ammunition, in the back yard of 2894 East 117th Street in Cleveland, Ohio, where the defendant was trying to jump the fence. Additionally, officers located a FN, model five-seven, 5.7 X 28mm pistol bearing serial number 386395595, loaded with one round of ammunition, in the same location.

The defendant subsequently asked the officers to take him to his vehicle, as he claimed he was a victim of the shooting. Officers read the defendant his Miranda rights and he was escorted to his vehicle. Upon checking the vehicle, the officers discovered the windows were shot out and there were two 5.7 X 28 shell casings in plain view on the driver seat and passenger side of the dashboard. Based on the officer's experience, he/she determined the bullet holes on the vehicle were shot from inside the vehicle, not from the outside of additional 5.7 X 28mm shell casings in the middle of the street near the defendant's vehicle.

The defendant told officers he was the sole occupant of the vehicle. Officers observed a black firearm holster in the driver door compartment, which was visible from outside the vehicle. Lastly, the defendant claimed he was not running with the other males, he was running because he was scared of being shot. When asked why he did not flag down the officers upon seeing them if he was scared, the defendant had no response.

Following the apprehension of the defendant, officers interviewed a witness who advised he/she heard the gunshots, and following the gunshots, he/she saw three males running from the area. Additionally, the witness observed the defendant running and meeting up with the other three males, and they all fled from the area together.

The defendant was arrested, transported to the Cuyahoga County Jail, and charged with Discharging a Firearm on or near Prohibited Premises (F3), two counts of Having Weapons While Under Disability (F3), Tampering With Evidence (F3), and Falsification (M1) in the Cuyahoga County Court of Common Pleas, Case Number CR-20-654042. While on the scene, the defendant provided a false name and date of birth. It was not until the officers arrived at the Cuyahoga County Jail, that they learned his true identity.

A DNA report was obtained from the Cuyahoga County Regional Forensic Science Laboratory, and it was determined that the DNA found on the 5.7 X 28mm caliber pistol matched the defendant's DNA profile.

The defendant has a prior conviction in Cuyahoga County Court of Common Pleas on March 18, 2016, for Domestic Violence (M1), Case Number CR-15-598633-A.

McGhee was charged with, and pleaded guilty to, unlawful possession of a firearm, 18 U.S.C. § 922(g)(9), based on his previous conviction for misdemeanor domestic violence under Ohio law. The presentence report recommended two sentencing enhancements that are pertinent to this appeal: using a firearm in connection with another felony offense, U.S.S.G. § 2K2.1(b)(6)(B), and "recklessly creat[ing] a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer," § 3C1.2. Over defendant's objections, the district court applied these enhancements and imposed a 92-month sentence. And it imposed the sentence consecutive to an unrelated state sentence that he was (and still is) serving. McGhee timely appealed.

II.

McGhee first objects to the application of the two sentencing enhancements set forth above. The government must demonstrate an enhancement applies by a preponderance of the evidence. *United States v. Dunham*, 295 F.3d 605, 609 (6th Cir. 2002). "We review de novo a district court's legal interpretation of the Sentencing Guidelines, and we review for clear error a district court's factual conclusions." *United States v. Flores*, 974 F.3d 763, 765 (6th Cir. 2020).

A.

*In connection with another felony offense enhancement.* The Guidelines increase a defendant's base offense level by four if he "used or possessed any firearm . . . in connection with another felony offense." § 2K2.1(b)(6)(B). The predicate felony here is one the State of Ohio

charged McGhee with following this incident (before dismissing it upon his federal indictment): "[d]ischarg[ing] a firearm upon or over a public road" that "created a substantial risk of physical harm to any person or caused serious physical harm to property." *See* Ohio Rev. Code Ann. § 2923.162(A)(3), (C)(2).

Ample evidence supports the district court's application of this enhancement. Most notably, physical evidence and McGhee's own statements connect him to firing a gun from his car at another person: officers found a loaded gun with McGhee's DNA near the crime scene, bullet casings matching that gun were in and around McGhee's car, and McGhee admitted to both being involved in a shootout and the only occupant of his car. We agree with the district court that these facts, alone, rise to the level of a preponderance of the evidence.

McGhee resists this conclusion by contending the district court erroneously placed the burden on him to demonstrate he was, as he claimed, acting in self-defense. *See* Ohio Rev. Code Ann. § 2901.05(B)(1). Although Ohio law appears unsettled whether self-defense is applicable here, *see, e.g.*, *State v. Gilcrease*, No. 108148, 2020 WL 729744, at *12 & n.2 (Ohio. Ct. App. Feb. 13, 2020), we need not decide that issue—even if it is a viable defense, we discern no clear error in the district court's factual determination that McGhee's claim of self-defense was incredible given the circumstances of the incident. A witness contradicted McGhee's version of how he fled, McGhee lied to officers at the scene about his own identity, and no other evidence supports McGhee's assertion of innocence. That there exists "some evidence that [McGhee] *may* have been acting in self-defense"—i.e., his statement to that effect—"is not necessarily preclusive of an ultimate finding that [he] was *not* acting in self-defense." *United States v. Adkins*, 729 F.3d 559, 565 (6th Cir. 2013). The district court's factual determination that McGhee did not act in self-defense was not clearly erroneous.

B.

*Reckless endangerment enhancement.* If a defendant "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer," the Guidelines increases his base offense level by two. § 3C1.2. "Reckless," in this context, means "a situation in which the defendant was aware of the risk created by his conduct and the risk was of such a nature and degree that to disregard that risk constituted a gross deviation from the standard of care that a reasonable person would exercise in such a situation." *See* § 3C1.2 cmt. n.2; § 2A1.4 cmt. n.1. (Neither party contests the applicability of the commentary, so we may assume that the commentary permissibly defines "reckless." *See United States v. Hill*, 963 F.3d 528, 531–32 (6th Cir. 2020)). Below, the district court concluded this enhancement applied because McGhee threw the "gun in a public place during daylight," creating a danger to the public.

Tossing a loaded gun aside may qualify as reckless, but binding caselaw concerning what must be in the record regarding the risk of danger to others mandates reversal in this case. *See United States v. Mukes*, 980 F.3d 526, 539 (6th Cir. 2020). Cataloging our pertinent decisions, *Mukes* highlighted that "[t]he idea that a discarded gun creates a substantial risk of serious bodily harm to another person is well supported by caselaw." *Id.* (citation omitted). But, we emphasized, the record must connect the gun's placement to the risk it created. Specifically, we have upheld the enhancement many times over when location of the discarded weapon is one where another person might reasonably discover it (like behind a restaurant, a public-housing complex, or in a residential neighborhood), thus indicating that its disposal under those circumstances creates a risk of harm to other people. *See id.* (collecting cases).

It is the government's burden to demonstrate that risk and, in *Mukes*, it did not do so. The defendant there dropped a loaded gun in front of officers, he was apprehended, and the gun was

recovered immediately after. *Id.* at 530–31. "The only information provided about the nature of the place in which the gun was discarded was a cursory mention that the area was a 'residential and commercial area,'" *id.* at 539, and the district court *"did not identify any person whom Mukes had placed at substantial risk of death or injury,"* *id.* at 532. We noted the lack of evidence "about any potential risk that a bystander might have come across the weapon during the brief encounter between Mukes and the police, particularly in light of the late hour of arrest, around three a.m.," and highlighted that "no search was needed to recover the firearm because Mukes dropped it in plain view of the police officers." *Id.* at 539.

Here, the record is nearly just as barren. We know little about where the gun was dropped, other than being in a backyard. The record is silent on whether any third parties were (or could have been) near the weapon. And, most critically, the officers here saw McGhee dispose of the gun, and they located it after detaining him. The facts of this case are substantially similar to *Mukes*, which the government does not even address (despite McGhee prominently relying upon the case).[1] Therefore, based on this record, the district court erred in finding applicable the § 3C1.2 enhancement. *Id.*; *see also United States v. Shivers*, 56 F.4th 320, 326 (4th Cir. 2022) (when "evidence shows that the gun was discarded in view of a police officer within an established perimeter, and there is no evidence that the gun could have gone unnoticed by the officer or that there were bystanders in the area who could have picked up the gun," this enhancement does not apply).

---

[1]The government also contends McGhee threw *two* firearms, not one, and that he did so in the bright of day. Although police recovered two guns near the fence, the record demonstrates McGhee threw one and a different man threw the other. The record is also silent on when this incident occurred.

III.

Finally, McGhee challenges the imposition of his federal sentence consecutive to a state sentence. When a district court imposes a sentence on a defendant who is already facing an undischarged sentence for a state conviction, the court may order the federal sentence to run concurrently, partially concurrently, or consecutively to the state sentence. 18 U.S.C. § 3584(a); U.S.S.G. § 5G1.3(d). Ordering a consecutive sentence is reasonable if the district court adequately explains its rationale for doing so. *See United States v. Berry*, 565 F.3d 332, 342 (6th Cir. 2009).

Here, at the time the district court sentenced McGhee, he was serving a four-year state sentence for trafficking heroin, carrying a concealed weapon, and obstructing official business. The court made very clear why it imposed a consecutive sentence to that state sentence: "the conduct is separate and distinct" from that underlying his state convictions. On review of this record, this articulated "generally clear" rationale was sufficient. Thus, the district court did not abuse its discretion (as defendant argues), let alone plainly error (the standard the government suggests) in imposing a consecutive sentence. *See United States v. Potts*, 947 F.3d 357, 369 (6th Cir. 2020) (citation omitted). Indeed, promoting "respect for the law" and providing "just punishment for the offense" were relevant factors for the court's consideration. *See* 18 U.S.C. §§ 3553(a)(2)(A), 3584(b).

McGhee does not challenge the district court's reasoning and instead argues he should have received jail-time credits for having been held by the State of Ohio for probation violations and on the state charges for this incident that were ultimately dismissed. But the district court was aware of that issue, explaining that his federal sentence would begin "whenever the State sentence ends." Accordingly, we see no reason to disturb that decision.

IV.

For these reasons, we vacate McGhee's sentence and remand to the district court for resentencing with instructions for it not to apply the § 3C1.2 enhancement.