**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

No. 21-4235

———————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ERIC HENDERSON,

Defendant - Appellant.

———————

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Kenneth D. Bell, District Judge.  (3:20-cr-00288-KDB-DSC-1)

———————

Argued:  October 26, 2023                    Decided:  December 13, 2023

———————

Before GREGORY and AGEE, Circuit Judges, and Robert S. BALLOU, United States District Judge for the Western District of Virginia, sitting by designation.

———————

Reversed by published opinion.  Judge Gregory wrote the opinion, in which Judge Agee and Judge Ballou joined.

———————

**ARGUED**:  Chiege Ojugo Kalu Okwara, Charlotte, North Carolina, for Appellant. Anthony Joseph Enright, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.  **ON BRIEF**:  William T. Stetzer, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

———————

GREGORY, Circuit Judge:

Eric Henderson appeals his sentence, which was imposed after he pleaded guilty to one count of possession of a firearm by a person previously convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). He contends that the district court erred in two ways when it calculated his sentencing guidelines range. First, it applied a four-level enhancement for possession of a firearm in connection with another felony offense pursuant to § 2K2.1(b)(6)(B) of the United States Sentencing Guidelines. Second, it applied a two-level enhancement for reckless endangerment during flight pursuant to § 3C1.2 of the Sentencing Guidelines. For the reasons that follow, we reverse and remand for resentencing.

I.

On June 5, 2020, police officers responded to a call in Charlotte, North Carolina, after the caller told them that Henderson was armed. J.A. 121. When officers arrived, they saw that Henderson was armed with a rifle and observed him shove a woman to the ground and point the firearm directly at her. *Id*. When law enforcement confronted Henderson, he fled. *Id*. Henderson was subsequently located hiding behind a shed a short distance away. *Id*. Officers later located a rifle hidden under a vehicle parked on the roadway. *Id*. At the time, Henderson was subject to an active Domestic Violence Protection Order ("DVPO"). *Id*.

On August 18, 2020, Henderson was charged in the United States District Court for the Western District of North Carolina with one count of being a felon in possession of a firearm. J.A. 24–36. He pleaded guilty to the charge without a written plea agreement. *Id*. During his guilty plea hearing, Henderson acknowledged that he had read and agreed with a factual basis

2

document filed by the government. The document outlined how Henderson's conduct satisfied the elements of § 922(g)(1), establishing the basis for his guilty plea. J.A. 32.

In preparation for Henderson's sentencing, a probation officer prepared a draft Presentence Investigation Report ("PSR"). J.A. 85. The draft PSR calculated Henderson's total offense level to be seventeen, based on the following factors: (1) a base level of fourteen; (2) a Specific Offense Characteristics adjustment for possession of a firearm in connection with another felony offense, which increased his offense level by four points; (3) an adjustment for reckless endangerment during flight, which increased his offense level by two points; and (4) adjustments for acceptance of responsibility, which collectively decreased his offense level by three points. J.A. 89–90. The draft PSR also assigned Henderson a criminal history category of IV. J.A. 101.

The PSR's Special Offense Characteristics adjustment was based on Henderson "us[ing] or possess[ing] any firearm or ammunition in connection with another felony offense." J.A. 90. The other felony cited in connection with this adjustment was possession of a firearm by a person who is subject to a Domestic Violence Protective Order ("DVPO"), in violation of § 922(g)(8). *Id.* (citing U.S.S.G. § 2K2.1(b)(6)(B)). The second adjustment, reckless endangerment during flight, was based on "[t]he defendant recklessly creat[ing] a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." *Id.* (quoting U.S.S.G. § 3C1.2).

Henderson objected to the Special Offense Characteristics enhancement and the reckless-endangerment enhancement. *Id.* In response to Henderson's objections, the

3

probation officer filed an addendum to the final PSR, but the addendum did not make any changes to the sentencing guideline calculations. J.A. 149–50.

At sentencing, both parties stipulated that there was a basis for Henderson's guilty plea and that the court could refer to the "Offense Conduct" outlined in the PSR to establish the basis for his guilty plea. J.A. 43. Henderson again raised objections to each of the sentencing enhancements included in the PSR. J.A. 44.

The court overruled Henderson's objections. J.A. 50. In imposing the sentence, the district court varied upward and sentenced Henderson to a term of sixty months. *Id.*

## II.

In reviewing whether a sentencing court properly applied the Guidelines, this Court "reviews the court's factual findings for clear error and its legal conclusions *de novo*." *United States v. Allen*, 446 F.3d 552, 527 (4th Cir. 2006). We therefore review the applicability of the two sentencing enhancements to which Henderson objected *de novo*.[1] The government bears the burden of establishing the applicability of a sentencing enhancement by the preponderance of the evidence. *United States v. Garnett*, 243 F.3d. 824, 828 (4th Cir. 2001).

---

[1] On appeal, Henderson's arguments against the two sentencing enhancements are different from the arguments he made below, but his objections to the enhancements during the sentencing were sufficient to preserve his challenge. *See United States v. Robinson*, 744 F.3d 293, 300 n.6 (4th Cir. 2014) (noting that even though a defendant did not make the same "precise argument before the district court, [the defendant] did challenge his criminal history score, and thus preserved his claim").

III.

A.

The district court applied a four-level enhancement pursuant to Sentencing Guideline § 2K2.1(b)(6)(B) because, according to the PSR, Henderson possessed the firearm "in connection with" another felony: possessing a firearm while under a domestic violence protective order. J.A. 123. In other words, the court added a four-level enhancement because Henderson fell into an additional class of prohibited persons under § 922(g), and therefore possessed a firearm "in connection with another felony offense." *Id.*

This Court has previously rejected the notion that a person can be punished more severely for simultaneously violating multiple provisions of § 922(g) with the same act of possession. In *United States v. Dunford*, we held that "a person who is a member of more than one disqualifying class only violates § 922(g) once for each act of 'possession.'" 148 F.3d 385, 389 (4th Cir. 1998). In *Dunford*, the defendant was indicted on fourteen counts of firearms offenses: seven for violation of 18 U.S.C. § 922(g)(1), and seven for violation of 18 U.S.C. § 922(g)(3). *Id.* at 387. All of the counts were based on a single act of possession of six firearms and ammunition. *Id.* We explained, "while a person must be a member of at least one of the nine classes prohibited from possessing guns under § 922(g), a person who is disqualified because of membership in multiple classes does not thereby commit separate and multiple offenses." *Id.* at 389.[2]

---

[2] We also held that the defendant's possession of the six firearms and ammunition, all of which were seized at the same time from his house, supported only one conviction under § 922(g). *Dunford*, 148 F.3d. at 389 (citing *United States v. Mullins*, 698 F.2d 686 (Continued)

5

Although *Dunford* only explicitly addressed double counting in the context of a multiple-count indictment, its principles also apply to a sentencing enhancement for "prohibited persons" under § 922(g). We held in *United States v. Blount* that the purpose of a § 2K2.1 enhancement is to ensure that the severity of a defendant's punishment increases if, "in addition to committing a firearms offense within the scope of § 2K2.1, he commits a separate felony offense that is rendered more dangerous by the presence of a firearm." 337 F.3d 404, 406 (4th Cir. 2003). In addition, Application Note 14(A) of the Sentencing guidelines defines "another felony offense" as an offense "*other than* the explosive or firearms possession or trafficking offense." U.S.S.G. § 2K2.1 cmt. N.14(C) (emphasis added).

Under *Dunford*, a person who is both a felon and subject to a domestic violence protection order, like Henderson, does not violate the statute more than once or commit separate offenses for a single instance of possession. *Dunford*, 148 F.3d at 389. *Dunford,* combined with *Blount*'s holding about the purpose of § 2K2.1, means that if there is no separate felony offense, the enhancement is not appropriate. *Blount*, 337 F.3d at 406. To allow the government to increase the severity of a defendant's punishment for violation of another subsection of § 922(g) for a single act of possession through a sentencing enhancement would be nothing more than a convenient method to sidestep *Dunford*.[3]

---

(4th Cir.1983)). We therefore affirmed only one of the defendant's § 922(g) convictions and remanded for resentencing. *Id*. at 389.

[3] The government cites *United States v. Shorter* for the proposition that two convictions for violations of separate sections of 18 U.S.C. § 922(g) based on one act of possession would be permissible, so long as a defendant did not receive concurrent or consecutive sentences for those two convictions. 328 F.3d 167 (4th Cir. 2003). However, (Continued)

6

Henderson was not charged with a violation of 18 U.S.C. § 922(g)(8). Under this Court's precedent, he could not be convicted and sentenced for violations of both 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 922(g)(8) that stem from a single instance of possession. *Dunford*, 148 F.3d at 389. He therefore cannot be subject to a sentencing enhancement based solely on the fact that he falls into more than one class of prohibited persons under 18 U.S.C. § 922(g).

### B.

The district court also applied a two-level enhancement, pursuant to Sentencing Guideline § 3C1.2 for reckless endangerment during flight because, according to the PSR, Henderson "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." J.A. 123. The district court said that "running away from law enforcement with a loaded rife is reckless in and

---

*Shorter* affirms our holding in *Dunford*, finding that a defendant who was charged with violations of § 922(g)(1) and § 922(g)(3) for the same act of possession only committed one offense. *Id.* at 173. In *Shorter*, the two § 922(g) counts were merged for sentencing purposes, and we held that the defendant stood "convicted of only one 18 U.S.C.A. § 922(g) offense." *Id.* In other words, the sentence imposed in *Shorter* was permissible under *Dunford* because it amounted to only one punishment for one act of possession. Not so in the case of Henderson, who received a greater punishment on account of being a prohibited person under two subsections of § 922(g), despite there being only one act of possession.

The government also argues that under *Witte v. United States*, enhancing a sentence for one offense based on another offense does not violate double jeopardy principles. 515 U.S. 389 (1995). It is true that the Supreme Court held in *Witte* that the Sentencing Guidelines do not violate the Double Jeopardy Clause by permitting a more serious sentence for a particular offense if that offense was "accompanied by or preceded by additional criminal activity." *Id.* at 403–404. However, here, there is no additional criminal conduct upon which to base the enhancement, because there is no "separate felony offense" upon which to base the enhancement. *Dunford*, 148 F.3d at 389.

of itself," and that it disagreed with Henderson's argument that hiding a gun was safer than running with it.  J.A. 50.

Henderson argues that his conduct does not meet the definition of recklessness.  He cites *United States v. Shivers* for the proposition that flight with a loaded firearm, without more, is not sufficient to warrant application of the two-level enhancement.  *See United States v. Shivers*, 56 F.4th 320, 326 (4th Cir. 2022).  We agree.  The district court erred in concluding that Henderson "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer."  J.A. 123.

In *Shivers*, decided after Henderson was sentenced, we stated that "we have never held in a published opinion that armed flight alone is enough to justify the application of the § 3C1.2 enhancement."  56 F.4th at 326.  Rather, to find that application of § 3C1.2 is warranted, we require "flight-plus-something more."  *United States v. Dennings*, 922 F.3d 232, 237 (4th Cir. 2019).

Several of our cases demonstrate what that "something more" is.  For example, engaging in a struggle with police officers is sufficient.  *See United States v. Williams*, 278 F. App'x 279, 280 (4th Cir. 2008).  Repeatedly attempting to remove an item from a pocket during armed flight or apprehension is, too.  *See United States v. Washington*, 80 F. App'x 850, 850–51 (4th Cir. 2003).  And so is running through a crowded parking lot and discarding a firearm in a heavily trafficked area.  *United States v. Grate*, 81 F. App'x 451, 453 (4th Cir. 2003).

Here, however, we do not have sufficient facts to warrant the application of § 3C1.2.  At his plea hearing and at sentencing, Henderson stipulated only to the factual accuracy of two documents:  the factual basis document filed by the government, which describes the

8

offense only in terms of the elements of 18 U.S.C. § 922(g)(1), and the offense conduct portion of the PSR, which includes that same limited description.  J.A. 32, 43.

The government presented no evidence that could demonstrate that Henderson acted recklessly or that he created a substantial risk of death or serious bodily injury.  Not only is there no evidence as to who apprehended Henderson, but there is no evidence demonstrating how the firearm got to the vehicle, the conditions surrounding that discovery, or distances between the area of the offense, the shed, and the vehicle.

On these limited facts, there is no evidence to suggest, as the government argues, that Henderson's flight created a risk of accidental discharge of the weapon or a risk to the community had the firearm not been found.  All we can reasonably conclude is that Henderson fled, and, at some point, someone found both Henderson and the firearm.  This is an insufficient basis on which to apply the § 3C1.2 enhancement.

## IV.

The district court erred in applying a four-level sentencing enhancement pursuant to § 2K2.1(b)(6)(B) and a two-level reckless endangerment enhancement pursuant to § 3C1.2.  We therefore reverse and remand for resentencing consistent with this opinion.

*REVERSED AND REMANDED*